THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THE HORN SILVER MINING COMPANY, Appellant.

The act providing for the taxation of certain corporations (Chap. 542, Laws of 1880, as amended by Chap. 361, Laws of 1881 and Chap. 151, Laws of 1882), is constitutional.

Defendant, a foreign corporation, was organized under the laws of the territory of Utah for the purpose of carrying on the business of mining and other business incidental thereto. It mined silver ore in that territory, which was manufactured into base bullion; this was shipped to Chicago and there refined. It was then shipped to the U. S. assay office in New York city, where it was again refined into standard silver bars, for doing which defendant paid two per cent of the silver. In an action to recover taxes and penalties under said act, *held*, that defendant was not a manufacturing corporation carrying on manufacture within this State within the exception in said act; that conceding it was a manufacturing corporation, this was not sufficient to exempt it from taxation under the act; it must also carry on manufacture in the State.

Statement of case.

Defendant's president, secretary and treasurer had their offices in New York city, its directors held their annual meetings there, and all its dividends were paid there. While most of its business was done in Utah and Chicago, its silver bullion was all sent to New York and sold there, the proceeds deposited and some portion loaned and other portions paid out for the company's purposes in that city. *Held*, that defendant was " doing business in this State " within the meaning of the act and so was liable to taxation under it; that it was not essential to such liability that the whole business of the corporation should be done within the State; that while, it might be, the having an office where meetings of its directors are held, transfer books kept, dividends declared and paid, and other business merely incidental to the regular business of the company is done, and an occasional business transaction in the State, would not bring it within the act, yet where it appeared, as in this case, that in addition a substantial part of the regular business of the company was carried on here, it was sufficient, and defendant was liable.

Also, *held*, that the entire capital of the defendant was properly taken as the basis in computing the tax; that this basis of computation was not changed by the amendment or supplement to the act in 1882 (Chap. 151, Laws of 1882), which authorizes the comptroller when dissatisfied with the report of any corporation liable to taxation, only a portion of whose capital is employed in the State, to fix and determine the amount of capital stock to be taken as a basis for taxation; that such provision did not authorize a corporation to report only the amount of capital employed in the State, and require the comptroller to take that amount as the basis, but simply authorized him, where only a portion of the capital is employed in the State and he is dissatisfied with the report, to fix the amount of capital stock to be taxed; that the discretion so given to the comptroller was not taken away until by the act of 1885 (Chap. 501 Laws of 1885), the liability to taxation was limited to " the amount of capital stock employed within this State."

Also, *held*, that as judgment had been entered herein before the passage of said act of 1885, defendant could have no benefit from the provision thereof authorizing the comptroller to settle and adjust accounts against a corporation by taking as a basis the capital employed in the State.

Also, *held*, that defendant was liable to the penalties imposed by the act of 1881. (§ 2, Chap. 361, Laws of 1881.)

(Argued March 9, 1887 ; decided March 15, 1887.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made November 17, 1885, which affirmed a judgment in favor

of plaintiff, entered upon the report of a referee. (Reported below, 38 Hun, 276.)

The nature of the action and the material facts are stated in the opinion.

*Julien T. Davies* for appellant. The defendant was not, during the years ending November 1, 1881, and November 1, 1882, doing business in the State of New York, within the meaning of the statute, and hence is not liable to taxation under the act of 1880 (Chap. 542), as amended. (*Eq. Trust Co. Case*, 96 N. Y. 387; *People ex rel. Bk. of Montreal* v. *Com'rs of Taxes*, 59 id. 40; *Smyth* v. *Intern. L. Assn. Co.*, 4 A. N. S. 11; *Doty* v. *Mich. C. R. R. Co.*, 8 Abb. 427.) The defendant is a manufacturing corporation. (*Briggs* v. *Tillotson*, 8 J. R. 304; *People ex rel. Blake* v. *Holdridge*, 4 Lans. 511; *Rogers* v. *Danforth*, 9 N. J. Eq. 289; *Schriefer* v. *Wood*, 5 Blatchf. 137, 215; *Furniss* v. *Midl. Ry. Co.*, 6 Eq. Cas. 473; *Queen* v. *Railway Co.*, 3 Q. B. 166; *Crane* v. *Price*, 4 M. & G. 580; Swan & Sayles Supp. to R. S. Ohio, 758; *Nassau Gas-Light Co.* v. *City of Brooklyn*, 89 N. Y. 409; *People* v. *N. Y. Float. D. D. Co.*, 92 id. 487; *People* v. *Knickerbocker Ice Co.*, 32 Hun, 475; *Comm.* v. *Penn. Coal Co.*, 2 Pear., 404; *Internt'l Nav. Co.* v. *Com'rs*, 13 Week. Notes Cases, 481; *Dudley* v. *Jam. Pond Aq. Co.*, 100 Mass. 84; *State* v. *Chadborn*, 80 N. C. 48.) The defendant carries on manufacture within the State of New York. (*Ex parte Smith*, 2 Pugs. [New Brunsw.] 147.) If any tax was due from the Horn Silver Mining Company in January, 1883, the basis of such tax was only the capital employed within this State. (*People* v. *Gold & S. Tel. Co.*, 98 N. Y. 67; *People* v. *Eq. Trust Co.*, 96 id. 387; *Goodrich* v. *Russell*, 42 id. 184; *Ropes* v. *Clinch*, 8 Blatchf. 305; *Skouten* v. *Wood*, 59 Mo. 380; *Skranika* v. *Allen*, 76 id. 369; *Comm.* v. *Hartnett*, 69 Mass. 451; *People ex rel. Bay St. Co.* v. *McLean*, 80 N. Y. 259; 73 Me. 518; 74 id. 376; *O. & M. R. R. Co.* v. *Weber*, 96 Ill. 443; *State Treas'r* v. *Auditor General*, 46 Mich. 226; Bishop on the Written Laws, § 141;

Maxwell, 119; *Stetson* v. *City Bk. of N. O.,* 2 Ohio St. 174; *Woodard* v. *M S. & N. Ind. R. R. Co.,* 10 id. 122; *Gould* v. *Town of Sterling,* 23 N. Y. 458; *Weed* v. *Tucker,* 19 id. 429; *Com'rs* v. *Lehigh Valley R. R. Co.,* 13 W. N. C. 476; *O. & M. R. R. Co.* v. *Weber,* 96 Ill. 451; *People ex rel. West F. Ins. Co.* v. *Davenport,* 91 N. Y. 585.) The State was not entitled to a judgment for any penalties. (*Del. Div. Canal Co.* v. *Com'rs,* 50 Pa. St. 399.) The duty of the comptroller to add ten per centum to the taxes of any year only arises in cases in which there is a neglect or refusal to pay. Mere non-payment is not a neglect or refusal. (*Del. Div. Canal Co.* v. *Com'rs,* 50 Pa. St. 399; *Easton Bk.* v. *Com'rs,* 10 Barr. 442; *Com'rs* v. *Ebervale C. Co.,* 2 Pear. 421; 91 Pa. St. 47.) The failure to pay a tax is not a crime nor strictly "an offense against the law" but a mere delinquency or "omission." (*State* v. *Dixon,* 37 N. Y. 43; *Del. Div. Canal Co.* v. *Com'rs,* 50 Pa. St. 399; *Com'rs* v. *Ebervale C. Co.,* 91 id. 47; *Bank* v. *Com'rs,* 10 Barr. [Penn.] 453.)

*Denis O'Brien,* attorney general, for respondent. The act of 1880 (Chap. 542), as amended, is constitutional. (*People* v. *Home Ins. Co.,* 92 N. Y. 328; *People* v. *Fire Assn. of Phila.,* id. 311; *People* v. *Gold & S. Tel. Co.,* 98 id. 67; *People* v. *Eq. Trust Co.,* 96 id. 387; *Doyle* v. *Cont. Ins. Co.,* 4 Otto, 535; *Paul* v. *Virginia,* 8 Wall. 169; *Liverpool Ins. Co.* v. *Massachusetts,* 10 id. 566; *Ducat* v. *Chicago,* id. 410; *Reading R. R. Co.* v. *Penn.,* 15 Wall. 232; *Osborne* v. *Mobile,* 16 id. 479; *Smith* v. *Turner,* 7 How. 283; *Munn* v. *State of Ill.,* 4 Otto, 113; *Waring* v. *Mayor, etc.,* 8 Wall. 110; *Hinson* v. *Lott,* id. 148.) The defendant while doing business within this State, is not exempted from taxation as a manufacturing corporation carrying on manufacture within this State. (Chap. 542, Laws of 1880, § 3, as amended by § 1, chap. 361, Laws of 1881; *Byers* v. *Franklyn Coal Co.,* 106 Mass. 131; *Dudley* v. *Jam. Pond Aq.,* 100 id. 183; *Frazee* v. *Moffett,* 20 Blatchf. 267; *People* v. *Knickerbocker Ice Co.,* 32 Hun, 475; 99 N. Y. 181.) The method by which the tax

was computed by the comptroller was correct. (96 N. Y. 387, 397; *Gold & S. Tel. Co. Case*, 98 id. 80.) There was no waiver of the penalty. (*Cook* v. *Kelly*, 12 Abb. Pr. 35; *People* v. *Allen*, 42 N. Y. 404; *Carr* v. *U. S.*, 8 Otto, 433; *Shipman* v. *State*, 42 Wis. 377.)

Earl, J. This action was commenced to recover certain taxes claimed to be due from the defendant under chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881, and chapter 151 of the Laws of 1882. The plaintiff claims in its complaint that there was due January 1, 1882, from the defendant, the sum of $7,500, being the tax at the rate of one and one-half mills of each dollar of valuation of its capital stock at $5,000,000, and also $1,500 as a penalty for neglect or refusal to pay the tax for two years. They also claim that there was due January 1, 1883, from the defendant, the sum of $30,000, being a tax at the rate of one-quarter of a mill for each one per centum of dividends declared during the year ending November 1, 1882, upon $10,000,000, the par value of defendant's capital stock, the dividends declared being twelve per centum; and also $3,000 as a penalty for neglect or refusal to pay the tax within fifteen days from January 1, 1883.

The defendant is a foreign corporation incorporated under the laws of the territory of Utah. The plaintiff recovered the amount of taxes and penalties claimed and the defendant complains of the recovery upon several grounds which will be separately considered.

The constitutional objections to the acts under which these taxes were imposed have been sufficiently considered in prior decisions of this court, and the acts must now be regarded as free from constitutional objection and, therefore, valid. (*People* v. *Home Ins. Co.*, 92 N. Y. 328; *People* v. *Equitable Trust Co.*, 96 id. 387; *People* v. *Gold and St. Tel. Co.*, 98 id. 67.) We have now, therefore, only to construe the acts and apply them to the facts of this case.

*First.* The defendant claims that it was "a manufacturing corporation carrying on manufacture within this State," and,

therefore, not liable to taxation under section 3 of the act of 1881, which excepts such corporations from taxation under that act.   As appears from its articles of association, the defendant was organized to conduct the business of mining in Utah territory, and the buying, selling, leasing and operating mines and mining claims in that territory, and smelting, reducing and refining works there or elsewhere ; to conduct a general mining, milling and smelting business in all its branches, including buying and selling mineral ores and bullion, carrying on a general mercantile business by buying and selling such goods, merchandise, stores and miners' supplies as are usually kept in and required by the wants of a mining camp or settlement, and building and operating all such roads, tramways and transportation routes as may be convenient in transporting the products of its business or procuring supplies and purchasing, hiring and holding all such real and personal property wherever situate, as may be required in carrying on any of its business, and, when no longer required for business purposes, leasing, selling or exchanging the same ; and generally to do all acts and things incidental to a general mining business, or to any of the specified pursuits, the corporation being primarily formed for the immediate purpose of working and developing the estate, property and premises known as the Horn Silver Mine, and for the treatment and reduction of the ores and metals therein contained.   The business of the defendant in Utah consisted in mining the ore and manufacturing it into base bullion.   The bullion was then shipped to Chicago where it had a refinery in which the lead was smelted and the base bullion separated from the silver.   The bullion thus refined was then shipped to the city of New York where it was delivered to the United States assay office where it was still further refined into standard silver bars for doing which the defendant paid two per cent of the silver.   It generally sold the receipts issued for the silver by the assay office in the city of New York, and so much of the proceeds as were not used there were transmitted to Utah and Chicago for use in the business of the Company at those points.   It did not

have or carry on within this State any refining or manufacturing establishment, and its claim to be a manufacturing corporation, carrying on manufacture within this State, is based solely upon the fact that it delivered its bullion to the assay office to be further refined for a compensation to be paid by it. Upon these facts, the referee found that it was not engaged in manufacture within this State, and we are of the same opinion. As its name implies, it is a mining corporation, and was organized primarily for that purpose, and all its other business was incidental, connected with and related to that. But even if it could in any proper sense, according to the common understanding of the phrase used in this statute, be deemed a manufacturing corporation in Utah, yet it cannot with any propriety be said that it carried on manufacture within this State. According to common comprehension and the ordinary use of language, the process of refining this bullion at the assay office was not a manufacture, and the assay office was not a manufacturing establishment. But whether it was or not, the defendant which employed the assay office for a compensation to refine the bullion was not itself engaged in the manufacture. It was no more a manufacturer than a farmer is who takes his grain to the grist-mill to be ground into flour, for a part of the grain or a money compensation, or who takes his wool to a cloth manufacturer to be made into cloth for a compensation, and then to be returned to him. A railroad company may manufacture all its cars and engines, and yet it cannot be properly classified as a manufacturing company.

The definition of the terms "manufacturing corporations" and "manufacture," as derived from some decisions and statutes to which our attention has been called, is of little service in the construction of the language of this act. These terms must be construed in view of the general purposes of the acts in which they are used, and the general phraseology found in connection with them. To give effect to the legislative intention, their ordinary meaning may be enlarged or restricted. Under this section, it is not sufficient to exempt a corporation from taxation that it is a manufacturing corpora-

tion, but it must also carry on manufacture within this State. In exempting such corporations from taxation under the act, the legislature may be supposed to have been influenced by two things :— a desire to encourage manufacture within the State, and the fact that a corporation carrying on any manufacturing business within the State would necessarily have visible, tangible property liable under the general laws of the State to taxation.   We are, therefore, constrained to hold that the defendant cannot be allowed the exemption claimed.

*Second.* It is claimed that the defendant was not, during the years 1881 and 1882 " doing business in this State," and that, therefore, it was not liable to taxation under the act of 1881.   It is quite true that by far the larger share of its business was carried on in Utah, and at Chicago.   But its president, secretary and treasurer had their offices in New York; the directors held their annual meetings there; its dividends were declared and paid there; its silver bullion was all sent there and sold there, and the proceeds of it received there; some of the proceeds were deposited in banks, some loaned in the city of New York, and some of it used for the purposes of the company in that city, and the balance was transferred to Chicago and Utah for use in the business of the company.   There was thus a very substantial portion of its business done in the city of New York.   The business did not consist of occasional transactions, but an office was kept there, and the business continuously transacted there during the whole year.   We cannot construe the words " doing business in this State " to mean the whole business of the corporation within this State; and while we are not prepared to hold that an occasional business transaction, that keeping an office where meetings of the directors are held, transfer books kept, dividends declared and paid, and other business merely incidental to the regular business of the corporation is done  would bring a corporation within this act; yet when, as in this case, all these things are done and in addition thereto a substantial part of the regular business of the corporation is carried on here, then we are unable to say that the

corporation is not brought within the act as one "doing business in this State." There is no injustice in subjecting to taxation such a corporation enjoying the benefits of our great mart, the advantages of our social order and the protection of our laws.

*Third.* It is further claimed that in computing the taxes, only the amount of defendant's capital employed within this State should have been taken as the basis and not its entire capital. We do not perceive how it is possible to limit the computation of the taxes as thus claimed. Section 1 of the act of 1881 provides that hereafter it shall be the duty of the president and treasurer of every corporation liable to be taxed on its corporate franchises or business, to make report to the comptroller annually, in writing, stating specifically the amount of "capital" paid in; that in all cases where any such corporation shall fail to make or declare any dividend upon either its "common or preferred stock," or in case the dividend or dividends made or declared upon either its "common or preferred stock" during the year shall amount to less than six per centum upon the par value of the "stock," the treasurer and secretary thereof shall in each year in which no dividend has been made or declared, or in which the dividend made or declared upon either its "common or preferred stock" amounted to less than six per centum upon the par value of the "stock," estimate and appraise the "capital stock" of the company upon which no dividend has been made or declared, or upon the par value of which the dividend or dividends made or declared amounted to less than six per centum, at its actual value in cash, and shall forward a certificate thereof to the comptroller. Section 3 provides that every corporation incorporated under any law of this State, or under the laws of any other State or country and doing business in this State, except savings institutions and other corporations named, shall be subject to, and pay a tax upon its corporate franchise or business to be computed as follows: If the dividend or dividends made or declared by such corporation, joint stock company or association during any year amount to six or more

than six per centum upon the par value of "its capital stock," then the tax to be at the rate of one-quarter mill upon the "capital stock" for each one per centum of dividends so made or declared; or if no dividend be made or declared, or if the dividend or dividends made or declared do not amount to six per centum upon the par value of the "capital stock," then the tax to be at the rate of one and one-half mills upon each dollar of a valuation of "the capital stock," made in accordance with the provisions of the first section of the act. And in case any such corporation, joint stock company or association shall have more than one kind of "capital stock," as, for instance, "common and preferred stock," and upon one of said stocks a dividend or dividends amounting to six or more than six per centum upon the par value thereof has been made or declared, and upon the other no dividend has been made or declared, or the dividends made or declared amounted to less than six per centum upon the par value thereof, then the tax shall be at the rate of one-quarter mill for each one per centum of dividend made or declared "upon the capital stock," upon the par value of which the dividend or dividends made or declared amount to six or more than six per centum, and in addition thereto, a tax shall be charged at the rate of one and one-half mills upon each dollar of a valuation, made also in accordance with the provisions of the act, of "the capital stock" upon which no dividend was made or declared, or upon the par value of which the dividend or dividends made or declared did not amount to six per centum. It is very clear from this review of the two sections, that the whole capital stock, the same stock upon which dividends are declared and paid, is to be taken as the basis of taxation. And so we held in *People* v. *Equitable Trust Co.* (96 N. Y. 387), where we said that "we find no authority in this act for apportioning a tax upon such a corporation as this upon the amount of dividends earned in this State, or upon the amount of capital stock employed in this State."

But it is claimed that since the act of 1882, a different construction should be given to the act of 1881. The act of 1882

did not amend any of the sections of the act of 1881, but added thereto three sections, the first of which, section 11, it is important only to notice. That provides that when the comptroller is dissatisfied with the report of any corporation or association or joint stock company liable to pay a tax under any of the provisions of the act, whose capital is only partially employed in this State, he is authorized to fix and determine the amount of capital stock which, in his judgment, shall be the basis for the tax under the provisions of the act, and to settle an account for the taxes, penalties and interest due the State thereon; and any association, corporation or joint stock company dissatisfied with the account so settled may, within ten days after notice thereof, appeal therefrom to a board consisting of the secretary of State, attorney general and State treasurer, which board, on such appeal, shall affirm or correct the account so settled by the comptroller, and the decision of such board shall be final. Under the act of 1881, it was the duty of every corporation liable to taxation under that act, annually to make a report to the comptroller stating specifically the amount of its entire capital paid in and the amount and rate of per cent of each dividend declared during the year; and in case it had declared no dividend during the year, or a dividend of less than six per centum upon the par value of its stock, it was also required to send a verified estimate and appraisal of its capital stock to the comptroller, and it was provided that if the comptroller was not satisfied with the valuation so made and returned, he could make a valuation thereof and settle an account upon a valuation made by him for the taxes, penalties and interest due the State thereon. And it was further provided that if the corporation was dissatisfied with the account so settled, it could appeal to a board consisting of the secretary of State, attorney general and State treasurer, which board, on such appeal, could affirm or correct the account as settled by the comptroller, and the decision of such board was final. Under that act the whole capital stock was to be reported and in the cases provided the whole capital stock was to be estimated and appraised, and all the clear and express provisions

in the act of 1881 are left unrepealed. Now what was meant by section 11 in the act of 1882? It does not authorize the corporation in making the report required by the first section of the act of 1881, to report only the amount of its capital employed within this State, and it does not require the comptroller to take the amount of capital so employed as the basis of taxation. The utmost effect that can be given to it is to authorize the comptroller, when he shall ascertain that only a portion of the capital of a corporation is employed within this State to fix and determine the amount of capital stock which, in his judgment, shall be the basis of the tax under the provisions of the act. That was an authority which he did not have under the act of 1881. Under that act he had no right to review the report of the corporation as to the amount of its capital stock, but under the act of 1882, in all cases where a portion only of the capital stock of the corporation is employed within this State, he has a right to review the report and determine the amount of the capital stock which shall be used as a basis for the tax. There is another qualification to section 11, and that is, before the comptroller can be called upon to exercise his judgment and discretion, he must be dissatisfied with the report of the corporation. Here there was no dissatisfaction on the part of the comptroller, and hence the emergency which authorized him to exercise his judgment, in fixing and determining the amount of capital stock which is to be taken as the basis for the tax had not arisen. That this is a proper construction of section 11 of the act of 1882 is made more clear by reference to chapter 501 of the Laws of 1885. In that act section 11 is amended so as to provide in distinct terms that the amount of capital stock which shall be the basis for taxation under the provisions of section 3 of the act of 1881, in the case of every corporation, joint-stock company and association liable to taxation thereunder, "shall be the amount of capital stock employed within this State." Then, for the first time, the basis for computing the tax was actually fixed by law at the amount of capital stock employed within this State, and the discretion conferred upon the comp-

troller by the same section in the act of 1882 was taken away. Therefore, while it is extremely hard and unjust that the defendant should be required to pay a tax computed upon the basis of its entire capital stock, we are unable so to construe the statute as to relieve it therefrom. The injustice of such a basis of taxation has finally been recognized by the legislature, and it is quite unfortunate for the defendant that it is deprived of the benefit of this change, particularly as by the fourteenth section of the act of 1885, the comptroller was authorized and directed, upon the application to him of any corporation, to make, settle and adjust all accounts against such corporation, joint-stock company or association, for all taxes and penalties arising under the third section of the act of 1881, since the 12th day of May, 1882, by taking as a basis for taxation the capital employed within the State by such corporation, association or joint-stock company. But there was a further provision in section fourteen that such corporation, joint-stock company or association should not be entitled to the benefit of a settlement upon such basis unless it shall have secured such adjustment and paid into the treasury the full amount of the taxes so settled before the 1st day of August, 1885, nor in the case of any tax for which suit had theretofore been brought by the attorney general and for which judgment had been entered therein. As judgment was entered in this action before the passage of that act, the defendant can have no benefit from its provisions.

*Fourth.* We see no reason to doubt that the defendant was liable to the penalties imposed by section two of the act of 1881, for neglecting to pay the taxes within the time specified therein.

We are reluctantly brought to the conclusion that the judgment below cannot be reversed. If it be true that as against all other corporations but this defendant and two or three others the taxes have been computed upon the basis of the capital employed in this State, then the defendant has good reason to complain of unjust discrimination, and it may very properly appeal to the legislature for the relief which it has

failed to obtain elsewhere.   A great state can afford to be both just and magnanimous, and it is certainly against a sound public policy to treat with injustice foreign corporations who come to our great metropolis to transact their business and thus add to the prosperity, wealth and importance of our State.

Our conclusion is that the judgment should be affirmed, with costs.

All concur except PECKHAM, J., dissenting and RAPALLO, J., not voting.

Judgment affirmed.