THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN A. ROEBLING'S SONS COMPANY, PLAINTIFF, *v.* EDWARD WEMPLE, COMPTROLLER OF THE STATE OF NEW YORK, DEFENDANT.

*Corporations — taxation — when a foreign corporation is "manufacturing within this State" — determination by the comptroller as to the amount of a tax — Laws of 1880, chap. 542, sec. 3; 1881, chap. 361; 1885, chap. 359.*

Under section 3 of chapter 542 of the Laws of 1880, as amended, every foreign corporation which does business in the State of New York is subject to a tax, except "manufacturing corporations carrying on manufacturing within this State."

In a proceeding to enforce this tax it appeared that the corporation proceeded against, manufactured in a neighboring State, iron, steel, wire and wire ropes: that the wire was shipped in coils to New York city, where it was made up into ship-rigging and other articles, some of it being fitted with blocks, pulleys and other attachments. It further appeared that the total value of the stock in trade manufactured in the State of New York seldom exceeded one per cent of the

PEOPLE ex rel. ROEBLING'S SONS v. WEMPLE. 453

Third Department, February Term, 1892.

value of the total product manufactured by the corporation, and that the yearly sales made in this State were about ten times the value of stock manufactured in this State.

*Held*, that, within the meaning of the statute, the corporation did not manufacture within the State of New York and was liable to the tax.

That it was the intention of the statute to encourage manufactures within the State of New York, and in that view a corporation seeking exemption must show that some substantial portion of its business of manufacturing was done in that State.

That the determination of the comptroller as to the amount of such a tax, unless shown to be clearly erroneous, would not be disturbed.

Certiorari to review the decision of Edward Wemple, as comptroller of the State of New York, in assessing taxes upon the relator for the years 1880 to 1889, inclusive.

The taxes were assessed under section 3 of chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881, and chapter 359 of the Laws of 1885.

*Charles Holdane Johnson*, for the relator.

*S. W. Rosendale*, attorney-general, for the defendant.

Herrick, J.:

The relator is incorporated under the laws of the State of New Jersey for the purpose of carrying on a manufacturing business. The certificate of incorporation provides: "That the borough of Chambersburgh, in the county of Mercer and State of New Jersey, is the place where the principal part of the business of the said company is to be carried on. That the city of New York, in the county and State of New York, is the place where said company may have an office and store for the sale of their manufactured goods, and for the transaction of other business connected therewith." There is no dispute but that the relator is doing business within this State, and hence subject to its laws in regard to taxation; but the relator claims that during the years for which the taxes were levied in this case it was doing a manufacturing business within this State, and hence comes within the exception mentioned in section 3 of chapter 542 of the Laws of 1880, which section provides that "every corporation * * * incorporated by any other State or country, and doing business in this State, except * * * manufacturing corporations carrying on manufacture within this State, shall be subject to and pay a tax," etc.

The relator alleges that it is carrying on a manufacturing business within the State of New York.

The defendant, in his return to the writ of *certiorari* herein, specifically denies that the relator is carrying on a manufacturing business within this State. The relator is incorporated for the purpose of manufacturing, buying and selling iron, steel, wire, wire ropes and all other materials used in connection therewith. And the relator states in the affidavit filed in its claim for exemption : "That the said corporation manufactures wire at the said factory at Trenton, New Jersey. That wire is shipped in coils to the New York factory; and that, at the said New York factory, the said raw material is made up into ship rigging, endless elevator chains and other useful articles. That the said wire is fitted with blocks, pulleys and other attachments at the said New York factory, and is thus converted into useful and complete articles, ready for market."

The defendant, in his return to the writ herein, alleges that the premises in the city of New York, used and occupied by the relator, are not used and occupied as a factory ; that they are used for its offices and place of business and for the storage of its goods; and " that on each of the storage floors two or three men are employed by the relator in adapting the manufactured articles of the company for such purposes as may be required, such as attaching loops to wire ropes for use as switching rods; attaching hooks and loops to wire cables for various purposes ; and that no wire or wire ropes or any other article is manufactured at its place of business."

This statement of the defendant may be taken as not in conflict with the affidavit of the relator, but as an explanation of what the relator described as the making up of the raw material and converting it into useful and complete articles, ready for the market. The process of treatment is not described by the relator, so that, from its statement alone, it cannot be determined whether it is in truth a manufacturing business that is being carried on in the State of New York or not ; the relator's affiant says it is, but does not so describe it as to enable the court to determine whether he is correct or not. As explained by the defendant, it does not seem to me that it is manufacturing within the meaning of the statute. What it did in the city of New York was but an incident of its business, not the business itself ; it was not manufacturing, but the putting together

PEOPLE ex rel. ROEBLING'S SONS v. WEMPLE.    455

THIRD DEPARTMENT, FEBRUARY TERM, 1892.

articles manufactured elsewhere; the cutting into lengths coils of wire can hardly, it seems to me, be the manufacturing of wire ropes, cables or rigging. "The definition of the terms 'manufacturing corporations' and 'manufactures,' as derived from some decisions and statutes to which our attention has been called, is of little service in the construction of the language of this act. These terms must be construed in view of the general purposes of the acts in which they are used, and the general phraseology found in connection with them. To give effect to the legislative instruction, their ordinary meaning may be enlarged or restricted." (*People* v. *Horn Silver Mining Co.*, 105 N. Y., 76–82.)

But assuming that in a sense, or technically speaking, that the acts or processes described is manufacturing, still I think it is not within the spirit or intent of the statute; it is not a carrying on manufactures within this State within its meaning.

In determining whether a given case is within a clause in a statute exempting certain property or interests from taxation, "the policy of the law in making the exemption must be considered and should have great weight." (*People ex rel. Brush Electric Ill. Co.*, 42 N. Y. St. Rep., 272–276.)

The terms used must be construed in view of the general purposes of the act; one of those purposes was to encourage manufactures within the State; and the facts in this case would seem to indicate, that a ruling that corporations doing business in the manner the relator has been, are exempt from taxation, would rather discourage than encourage the growth of manufacturing interests in this State. The great proportion of relator's manufacturing is done outside the State; the proportion inside, if it be considered manufacturing, is so small that it would almost appear that it was done here merely for the purpose of relieving the business from taxation.

To secure exemption under this act some substantial portion of the manufacturing business of the corporation should be done here, it should not be a mere incident of the business or done in connection with the main business, it is the manufacturing business that is to be exempted, not the business that any one chooses to establish in connection with manufacturing, and the manufacturing must be real, not colorable. It appears from the reports of the relator made to the defendant, that the value of the entire manufactured product

of the relator during the years for which the taxes in question have been levied is as follows:

| | | | |
|---|---|---|---|
| 1880 | $1,768,994 59 | 1886 | $2,094,379 36 |
| 1881 | 1,559,968 08 | 1887 | 2,835,523 15 |
| 1882 | 1,969,422 64 | 1888 | 3,004,609 61 |
| 1883 | 1,920,339 15 | 1889 | 3,303,450 56 |
| 1884 | 1,785,121 65 | 1890 | 5,347,270 55 |
| 1885 | 1,430,041 21 | | |

The total value of the stock in trade the relator claims to have manufactured within the State of New York during the same years is as follows:

| | | | |
|---|---|---|---|
| 1880 | $22,900 00 | 1886 | $17,155 28 |
| 1881 | 17,520 00 | 1887 | 35,490 36 |
| 1882 | 21,739 90 | 1888 | 40,135 12 |
| 1883 | 13,925 00 | 1889 | 28,650 26 |
| 1884 | 36,650 76 | 1890 | 43,196 80 |
| 1885 | 15,965 00 | | |

The sales by the relator, by its agents and officers in the State of New York during the same years, were as follows:

| | | | |
|---|---|---|---|
| 1880 | $252,804 39 | 1886 | $245,075 47 |
| 1881 | 174,117 42 | 1887 | 332,846 02 |
| 1882 | 197,636 88 | 1888 | 333,626 85 |
| 1883 | 174,402 50 | 1889 | 319,214 02 |
| 1884 | 305,423 77 | 1890 | 421,698 99 |
| 1885 | 145,136 44 | | |

Comparing the amount claimed to have been manufactured in the State of New York with either the total amount manufactured or with the amount sold within the State seems to me would bring one to the conclusion that to exempt the business done in this State, because of the manufacturing done within the State, would be very far from encouraging the growth of manufacturing industries here; and unless the words of the statute can be construed in no other way the relator should not be relieved. It would be a plain case of the letter of the statute killing its spirit.

It seems to me that the manufacturing done by the defendant in this State is colorable merely, and does not come within the exemption of the statute. (*People ex rel. Seth Thomas Clock Co. v.*

*Wemple*, 42 N. Y. St. Rep., 60; *People ex rel.* v. *Horn Silver Mining Co.*, 105 N. Y., 76.)

Being subject to taxation, the determination of the comptroller as to the amount, unless clearly shown to be erroneous, will not be disturbed. (*People ex rel. Seth Thomas Clock Co.* v. *Wemple*, 42 N. Y. St. Rep., 60; *People ex rel. American C. and D. Co.* v. *Wemple*, Id., 400, 404.)   And the determination of the comptroller not being clearly shown to be erroneous in this case should not be disturbed.

The determination of the comptroller is affirmed, with fifty dollars costs and printing disbursements.

PUTNAM, J., concurred; MAYHAM, P. J., not acting.

Determination of the comptroller confirmed and writ of *certiorari* quashed, with fifty dollars costs and disbursements.