· PEOPLE ex rel. WESTERN UNION TEL. CO. v. ROBERTS.

(Supreme Court, Appellate Division, Third Department.    May 4, 1898.)

1. OVERPAYMENT OF TAXES—RETURN—CORPORATION TAX LAW.

Under Laws 1889, c. 463, which authorized the state comptroller to revise and readjust any settled account for taxes previously paid under Laws 1880, c. 542 (Corporation Tax Law), and, whenever it shall appear that the same were illegally paid, to "charge or credit" the difference resulting from such transaction to the current accounts of the corporation, the comptroller has no authority to direct the refunding of any tax previously paid; nor can the result be accomplished indirectly by an assignment of a part of the claim for excess taxes previously paid, as found by the comptroller, and crediting the amount assigned to the taxes due from the assignee thereof.

2. SAME—EQUITABLE RELIEF.

The fact that by said law a company was not given adequate relief because of a sum being credited to its account, the interest on which more than pays its current taxes, does not authorize the granting of relief not provided for by statute.

3. ACTION AGAINST THE STATE—SET-OFF—MANDAMUS.

A citizen cannot compel the state by mandamus to apply certain funds in its hands to the payment of his taxes, since it is in effect a set-off against a claim of the state, which is not permissible.

Appeal from special term, Rensselaer county.

Action by the people of the state of New York, on the relation of the Western Union Telegraph Company, against James A. Roberts, comptroller, for a peremptory writ of mandamus. From an order granting the writ, defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, and MERWIN, JJ.

T. E. Hancock, Atty. Gen., and G. D. B. Hasbrouck, Dep. Atty. Gen., for appellant.

Foster, Kelly & Isenbergh and Brown & Wells, for respondent.

MERWIN, J.    The Panama Railroad Company is a domestic corporation organized in 1849, and is subject to the franchise tax imposed by chapter 542 of the Laws of 1880 and the acts amendatory thereof or supplemental thereto.    Under these laws, prior to 1889, the company had been assessed, and had paid into the state treasury a large amount of taxes.    In 1889, by chapter 463 of the Laws of that year, the comptroller was authorized to revise and readjust any account theretofore settled by himself or any preceding comptroller against any corporation for taxes under the acts referred to whenever it should be made to appear by evidence submitted to him that the same had been illegally paid, or so made as to include taxes which could not have been lawfully demanded, and to resettle the same according to law and the facts, and charge or credit, as the case might require, the difference, if any, resulting from such revision, upon the current accounts of the corporation.    In 1891 the Panama Railroad Company, under the provisions of the act of 1889, made application to the then comptroller for resettlement and revision of its account for taxes theretofore paid.    A revision was accordingly made, and as a result the comptroller on December 30, 1891, credited the company in its account with the sum of $94,-

028.85.   On the 21st July, 1896, the Panama Company, by assignment in due form, transferred to the relator the amount of.$5,789.08 out of the total credit above stated, and on the 8th September assigned the balance to the Manhattan Railway Company.   The relator is a domestic corporation, and has a current account with the state in the office of the comptroller for taxes assessed under the acts referred to, and large sums of money become due to the state each year on account of such taxes.   The annual tax assessable against the Panama Railroad Company does not now exceed the sum of $400.   In August, 1896, the relator demanded of the defendant that the amount of credit transferred to it by the Panama Company be credited to the relator on its current account, or, as the defendant in the record here states it, in payment of taxes due from the relator.   This the defendant declined to do.   The motion for a mandamus was made in December, 1897.   The defendant claimed that the readjustment in 1891 was made without authority of law; that the taxes for which the credit was granted were assessed and collected prior to the passage of chapter 501 of the Laws of 1885, and were legal and demandable under the law as it then stood (People v. Horn Silver-Min. Co., 105 N. Y. 76, 11 N. E. 155); that the Panama Company was not entitled to the credit granted, and that the defendant had no right to entertain the assignment of the credit.

Under the act of 1889 the comptroller had no authority to direct the refunding of any tax previously paid into the state treasury. People v. Wemple, 133 N. Y. 617, 30 N. E. 1002.   In the case cited it is said:

"The legislature did not confer power upon the comptroller or the court to direct the refunding of any tax paid into the treasury to the corporation that paid it.   There may be cases where it would be just, and perhaps necessary, to refund the money paid, but such cases are reserved for the action of the legislature itself.   Taxes once paid into the treasury under this statute cannot be paid back without an appropriation.   All the comptroller is authorized to do in an application for revision and readjustment is to resettle the account, and to charge or credit, as the case may require, the difference, if any, resulting from such revision, 'upon the current account' of the corporation filing the petition."

The relator evidently desires the transfer of credit to its own account for the purpose of using it in payment or satisfaction of taxes assessed or to be assessed against it by the comptroller. These taxes are payable to the treasurer of the state, and, if the credit transferred to the relator becomes operative as a payment, taxes to that amount are diverted from the treasury for the purpose of the payment of a claim against the state held by the relator as the assignee of the Panama Company.   This operates indirectly, through the act of the comptroller in transferring the credit, as a payment of a claim which the comptroller had no right directly to pay.   He had no right to draw a warrant on the treasury for its payment, and no money could be paid out of the treasury except in pursuance of an appropriation by law.   Const. art. 3, § 21.   The claim of the Panama Company, if a valid one, drew interest (People v. Wemple, supra) which would be more than its current taxes. The fact that by the provisions of the act of 1889 the company was

not furnished full or adequate relief does not authorize the court to grant relief not given by that or any other statute. The question is not whether the claim ought to be paid, but whether the particular relief here asked for is authorized by law. The relator, in substance, seeks to offset a claim it has against the state against a claim the state has against it. This it has no right to do. People v. Corner, 59 Hun, 299, 12 N. Y. Supp. 936, affirmed in 128 N. Y. 640, 29 N. E. 147, without opinion. In that case the plaintiff sued the defendant for goods sold and delivered to the defendant from the state reformatory at Elmira. The defendant interposed a counterclaim for damages for breach of contract in not furnishing other goods upon orders of defendant accepted by the plaintiff through its agents. It was held that, assuming that the facts alleged constituted a cause of action in favor of the defendant, and that equitably and justly he was entitled to recover, still he was not entitled to use his claim as a set-off against the claim of the state; that, not being allowed to bring an action against the state, he could not use his cause of action as a set-off against a claim of the state. Assuming that the adjustment under which the relator claims is a valid one, we are of the opinion that the relator has no right to compel the defendant to apply the assigned credit or claim in payment of taxes assessed or to be assessed against the relator, and that, therefore, the order for a mandamus was improperly granted.

Order reversed, with $10 costs and disbursements, and motion for writ denied, with $10 costs. All concur.