## DEMAREST v. FLACK et al.

*(Common Pleas of New York City and County, General Term.* June 26, 1890.)

1. PARTNERSHIP—EVIDENCE of.

    In an action against several defendants for injuries sustained upon a toboggan slide, evidence showing that one defendant hired the grounds for the use of a company; that another paid bills in connection with the slide as treasurer of the company; and that two other defendants inspected toboggans and other goods, and ordered the same to be sent to the grounds,—is insufficient to authorize a finding of liability as partners for personal injuries sustained in the operation of the slide.

2. CORPORATIONS—ORGANIZATION—COLLATERAL ATTACK.

    A certificate of incorporation was issued to residents of New York by the secretary of state of West Virginia, under Code W. Va. 1884, c. 54, § 10, which provides that "when a certificate of incorporation shall be issued by the secretary of state pursuant to this chapter, the corporators named in the agreement recited therein, and who shall have signed the same, * * * shall, from the date of said certificate, * * * be a corporation by the name, and for the purposes and business, therein specified." The corporation was organized under such certificate, and was engaged in the business therein specified. *Held,* that it could not be objected in an action against the corporation for personal injuries that in its organization the corporation violated a further provision of the Code of West Virginia that every director must be a resident of that state, unless it is otherwise provided by a by-law.

Exceptions from trial term.

Action by Frances E. Demarest, an infant, etc., against James A. Flack, Hugh J. Grant, Alfred de Cordova, Frank Hardy, and Gabriel Case, composing the America's Winter Carnival Company. The complaint was dismissed, and plaintiff's exceptions were ordered heard, in first instance, at general term.

Argued before LARREMORE, C. J., and BOOKSTAVER, J.

*Seaman Miller,* for plaintiff.    *W. Bourke Cockran,* for defendants.

LARREMORE, C. J. This is an action for damages for personal injuries sustained by the plaintiff upon a toboggan slide, on January 20, 1888. The

premises upon which said slide was situated were owned by the New York Driving Club. The complaint alleges that the defendants "were a joint stock company doing business in the city of New York under the name and style of 'America's Winter Carnival Company,' and that said defendants were, and still are, the owners thereof." No proof, however, was offered to show that the defendants had organized or constituted a "joint stock company," as that term is understood under the statutes and adjudications of the state of New York. Even if such proof had been made, as the number of persons composing the alleged "joint stock company" would have been less than seven, such allegation would have had little legal significance, because plaintiff would have been obliged, as she has done, to sue the members thereof as partners, and not to sue the alleged company in the name of its president. Code Civil Proc. § 1919. In any view of the matter, therefore, it was incumbent upon the plaintiff, in order to maintain this action, to show that the defendants were jointly interested in operating the toboggan slide upon which the accident happened. Even making all possible allowance for the difficulty under which the plaintiff labored, in being compelled to call hostile witnesses for proof on this point, we cannot hold that a *prima facie* case was made out. The witness Jones testifies that, if he remembered rightly, these grounds were let by the New York Driving Club, for the purpose of putting up these toboggan slides, to the present defendants. On cross-examination, however, he says that the only one of them who personally agreed with him as secretary of the New York Driving Club, or with the executive committee thereof, to take the place, was the defendant Case. He further avers that "the America's Winter Carnival Company was the tenant which had possession of those grounds on which ran this toboggan slide;" that he regarded himself as an employe of that company; and that he was paid for his services as manager thereof, by the check of Mr. de Cordova, as treasurer of the Winter Carnival Company. The testimony of the witness Grant is to the effect that the America's Winter Carnival Company constructed toboggan slides in Fleetwood Park, and that he was a stockholder in such corporation. The fact that the defendants Case and Grant inspected toboggans and other goods, and ordered the same to be sent to Fleetwood, is not sufficient to charge them with liability, either individually or as partners with their co-defendants. Such acts on their part might have been performed as agents for and in the interest of America's Winter Carnival Company. It appears that for the services of the witness Cook as civil engineer, in drawing the plans and specifications for the slides, he also was paid by a check signed by Mr. de Cordova as treasurer. Even if no evidence of incorporation had been introduced, we should have been obliged to hold that the record discloses no facts from which a jury would have been authorized to find a liability as partners, for any debts contracted or damages sustained in the operation of said slides.

But it does appear that a certificate of incorporation was filed under the laws of the state of West Virginia, on or about the 12th day of December, 1887, and that these defendants became stockholders in the company so formed. The Code of West Virginia is in evidence, and, in section 10 of chapter 54 thereof, provides that "when a certificate of incorporation shall be issued by the secretary of state, pursuant to this chapter, the corporators named in the agreement recited therein, and who have signed the same, and their successors and assigns, shall, from the date of the said certificate until the time designated in the said agreement for the expiration thereof, unless sooner dissolved according to the law, be a corporation by the name and for the purposes and business therein specified." It also appears that the secretary of state of West Virginia issued, under the great seal of said state, the certificate provided for by section 9 of chapter 54 of said Code, which officially declared the America's Winter Carnival Company to be, from said 12th day of December, 1887, a corporation, to be known by said name, and to ex-

ist for the purposes set forth in the said certificate or agreement. In *Church* v. *Pickett,* 19 N. Y. 485, it was held that "two things are necessary to be shown in order to establish the existence of a corporation *de facto,* to-wit: (1) The existence of a charter or some law under which a corporation with the powers assumed might lawfully be created; and, (2) a user by the party to the suit of the rights claimed to be conferred by such charter or law." We think the defendants have established both the presumptive legislative organization and the user prescribed by the case cited. It is argued that the America's Winter Carnival Company is not a legally existing corporation, of which the courts of this state can take cognizance, because of alleged irregularities of action, and failure to comply with statutory requirements on the part of the corporation and its directors and officers. The point is especially insisted on, that, as the Code of West Virginia prescribes that every director must be a resident of that state, unless it is otherwise provided by a by-law, and as all the directors of said company are residents, not of West Virginia, but of New York, and no by-law authorizing this innovation is shown, the attempted organization is nugatory, and the would-be stockholders must be treated merely as partners. But, outside of the language of section 10 of chapter 54, above quoted, which expressly provides that from the date of the certificate the signers thereof and their successors shall be a corporation, we are of opinion that well-settled rules of law in this as well as other states of the Union would defeat plaintiff's contention. In the early and well-known case of *People* v. *Manhattan Co.,* 9 Wend. 351, it was held that, although incorporation had been granted upon condition that the company should, within 10 years, furnish a supply of pure water to such persons as chose to avail themselves of the same, and the time so provided had expired, the proviso was not a condition precedent, but a defeasance; that the corporation had come into being, and still existed; and that, therefore, it was not compelled to set forth the condition, and allege performance thereof, even to show a present right, as, in judgment of law, a corporation once shown to exist is presumed to continue until the contrary is shown. In *Eaton* v. *Aspinwall,* 19 N. Y. 119, it was held that a defect in the proceedings to organize a corporation is no defense to a stockholder in a suit to enforce his individual liability, he having participated in its acts of user as a corporation *de facto.* Here it appeared that a certificate of incorporation had been filed under the laws of New York, but that the 10 per cent. of the capital required by the general act to be paid in had not been so covered into the treasury; "yet the company elected its officers, hired an office in the city of New York, and went into actual operation there as a corporation." In the opinion it was said that "when its corporate existence has been thus established the plaintiffs would not have been permitted to prove, as a defense for them, the facts relied upon by the defendants, for the familiar reason that the right of a corporation to sue cannot be inquired into collaterally. Thus it will be seen that this corporation, though not a valid corporation in point of law, may carry on its enterprises, have its day in court, and divide its revenue among the holders of the shares of its capital, until the state shall interpose and ask that it be dissolved; and that the only real necessity of complying with the statute in relation to the payment of the 10 per cent. was to prevent proceedings in behalf of the people to put an end to its corporate functions." This case has been largely cited in our own courts, and often quoted and followed in the tribunals of sister states. In *Palmer* v. *Lawrence,* 3 Sandf. 161, it was held that a certificate made and filed for the purpose of organizing a banking association, if in conformity with the terms of the act, is evidence that the provisions of the statute have been complied with, and that the company was duly organized, and, further, that a defendant who has contracted with a corporation *de facto* will not be permitted to allege any defects in its organization, as affecting its capacity to contract or sue, all such objections being available only to the sovereign power of the state.

In *Swartwout* v. *Railroad Co.*, 24 Mich. 389, the rule was stated by COOLEY, J., as follows: "It is obvious that all questions of regularity in the proceedings on the part of the associates in taking upon themselves corporate functions, purporting to emanate from its sovereignty, are questions which concern the state rather than individuals, and should only be raised in a proceeding to which the state has seen fit to make itself a party." In a later case in *Bank* v. *Stone*, 38 Mich. 779, it was held that where a body professing to be a corporation had been dealt with expressly as such, those who have so dealt with it cannot question its corporate existence for the purpose of charging its members, individually or as partners. See, also, *Stout* v. *Zulick*, 48 N. J. Law, 599, 7 Atl. Rep. 362; *Bank* v. *Almy*, 117 Mass. 476; *Society* v. *Perry*, 6 N. H. 164; *Petroleum Co.* v. *Weare*, 27 Ohio St. 343; *Casey* v. *Galli*, 94 U. S. 673; *Bank* v. *Willard*, 25 N. Y. 575; *McFarlan* v. *Insurance Co.*, 4 Denio, 392. In *Water-Works* v. *San Francisco*, 22 Cal. 434, it was expressly held that omissions or irregular performances relating to the organization of a corporation can only be investigated in a direct proceeding instituted by the state for that purpose, and not in a collateral action. Especially was this thought to be the rule with regard to acts which are not made prerequisite to the exercise of corporate powers, but which operate as a forfeiture. On this latter point see, also, *Mining Co.* v. *Woodbury*, 14 Cal. 424. There is an overwhelming current of authority throughout the United States on the point that, where a corporation has once come into actual existence, through the due observance of the original formalities required for that purpose, subsequent omissions or irregularities in the completion of its organization or the prosecution of its business shall not be available as a defense in matters of contract, either to the corporation itself or its directors or stockholders, and cannot be taken advantage or by outsiders who have had business dealings with it. We have not been able to discover any reported case in which it was attempted to raise this point in an action on tort, but we cannot see why the same principles should not apply. Here it is shown that the certificate of incorporation was regularly executed and filed, and the secretary of state of West Virginia duly certifies to such facts. User on the part of the company is shown by the testimony of all the witnesses as to the usual methods of conducting business. Within the reasoning of the authorities above cited, America's Winter Carnival Company, as far as the outside world was concerned, was a *de facto* corporation, able to contract debts, and liable for the payment thereof, as well as for all damages sustained by its customers through the negligence of its employes. In *Bank* v. *Almy*, 117 Mass. 476, which follows the general current of authority upon the point in question, it was held that, when a certificate of organization had been issued by the secretary of the commonwealth to members of a proposed corporation, in accordance with the statute, said corporators were not liable as partners by reason of having transacted business before the whole of the capital stock had been paid in, although this was in direct violation of the statute on the subject. In that case it was said by GRAY, C. J., that this defect would not have prevented a suit against the corporation itself; and that, therefore, the stockholders should not be held personally liable. In the case at bar, the non-compliance with the subsequent statutory formalities would not have been a bar to a suit against the America's Winter Carnival Company, and the reason for exempting the stockholders from individual liability, because the remedy exists against the company itself, applies with equal force. A further consideration advanced by Chief Justice GRAY was that the case of stockholders, in a corporation which may have been imperfectly organized, is not analogous to the case of a limited partnership, for the reason that, in the latter instance, the intention is to form a partnership of some kind; and the statute expressly provides that if the technical formalities are not observed, the partnership shall be an ordinary one, and its members liable *in solido*. In that case, as in the case at bar, there was no intention to form any partnership at all, and we approve of the sug-

gestion of the learned chief justice of Massachusetts that, under such circumstances, there is no statutory authority, and there would be no just ground, for saddling certain stockholders with liability, the nature of which they had never contemplated. The exception should be overruled, and judgment ordered for the defendants, with costs.