PEOPLE ex rel. SOUTH. COT. OIL CO. *v.* WEMPLE.   83

THIRD DEPARTMENT, JULY TERM, 1891.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE SOUTHERN COTTON OIL COMPANY, Relator, *v.* EDWARD WEMPLE, as Comptroller of the State of New York, Defendant.

*Taxes — when a foreign corporation is " doing business" in this State — chapter* 542 *Laws of* 1880, *is not an interference with interstate commerce — is not a tax on property — a license tax and a tax on a franchise, distinguished — certiorari.*

In a proceeding brought to enforce a tax imposed under section 3, chapter 542, Laws of 1880, which provides that every corporation, joint-stock company or association, incorporated under the laws of this State, or incorporated under the laws of any other State, "and doing business in this State," is subject to tax upon its corporate franchise or business, it appeared that a foreign corporation maintained a sales agency in the city of New York, sold the product of its mills, refined crude oil, maintained a storage depot in that State, and also kept on deposit in New York banks large sums of money for use in its business in that State.

*Held,* that it was subject to the tax.

That said act was not unconstitutional as to foreign corporations upon the ground that it amounted to an interference with interstate commerce.

That such a tax was not one upon property, but upon the privilege of doing business in the State of New York.

That there is a clear distinction between a license tax imposed by a State upon the selling agents of a person who is a citizen of another State, sent here to make sales, and a tax laid upon such a citizen who comes into this State, brings his property with him and mingles it with the general mass of commercial capital; that in the latter case the elements of interstate commerce are lacking.

The question as to whether the conditions imposed by section 17 of chapter 501 of the Laws of 1885 apply to a *certiorari* issued to review a readjustment and resettlement of a tax by the comptroller, provided for by section 19 of chapter 463 of the Laws of 1889, considered.

HEARING upon the return to a writ of *certiorari* granted upon the petition of the relator, the Southern Cotton Oil Company, on the 30th day of December, 1890, at the New York Special Term, to review the determination of the defendant Edward Wemple, as comptroller of the State of New York, in assessing a tax upon said relator, a New Jersey corporation, under chapter 542, Laws of 1880, and the acts amendatory thereof.

*W. W. McFarland,* for the relator.

*Charles F. Tabor* and *I. H. Maynard,* for the defendant.

84    PEOPLE ex rel. SOUTH. COT. OIL CO. v. WEMPLE.

THIRD DEPARTMENT, JULY TERM, 1891.

LEARNED, P. J.:

In my own opinion this writ should be quashed for reasons which I will briefly state. The revision and readjustment of this tax was made by the comptroller September 2, 1890, and his order thereon was served that day on the relator. The petition for a *certiorari* was made December twenty-ninth, and was presented to the court December thirtieth, and the writ was issued the thirty-first. No papers or notice had been served on the comptroller, and nearly three months had elapsed since service of the order on the relator. Sections 19 and 20, added to the corporation tax law by chapter 463, Laws of 1889, now form a part of it; and the whole act, including section 17, is to be construed as one enactment.

Section 17, added by chapter 501, Laws of 1885, is not repealed. It prescribed certain conditions only on which a writ of *certiorari* to review could be granted. No *certiorari* can now be granted to review the original adjustment and settlement of the tax by the comptroller. (*People ex rel. Edison Electric Light Co.*, 11 N. Y. Supp., 246.) But a *certiorari* may issue to review the readjustment and resettlement provided for by section 19. Therefore, the conditions imposed by section 17, on the issuing of a *certiorari* in proceedings under this tax law, must now refer to the *certiorari* under section 19. There is no other *certiorari* to which they can refer; and as they have not been repealed we have no right to disregard them. There is no reason why the legislature should not require the same conditions for a *certiorari* to review the resettlement which were required for a *certiorari* to review the original settlement. The relator has had an opportunity to be heard before the comptroller and to state his views. If he is still dissatisfied, it is proper that his *certiorari* should be taken with the same promptness, and on the same terms as would have been required when he sought to review a decision where he had not been heard. If the legislature thought that those terms were too strict, they could easily have repealed or modified them at the time when they added sections 19 and 20. But there was nothing in those sections which indicated an intention to repeal. It was desirable to specify in section 20 that a *certiorari* might be issued, because section 1 of the original act had provided for an appeal to State officers. Such right of appeal might be thought to prevent a *certiorari*. (Code, § 2122.) The

PEOPLE ex rel. SOUTH. COT. OIL CO. *v.* WEMPLE.   **85**

Third Department, July Term, 1891.

limitations of four months in section 2125 of the Code would cause too much delay in the collection of this tax.

Therefore, I think that this *certiorari* was too late and was improperly granted. But a majority of the court are of the opinion that a contrary doctrine was held by them in *People ex rel. American Construction and Dredging Company* v. *Wemple, Comptroller* (60 Hun, 225). Hence I proceed to examine the merits.

The first question on the merits is whether the relator is "doing business in this State" within the meaning of the corporation tax law, section 3, chapter 542, Laws of 1880. The relator maintained a sales agency in the city of New York; sold the product of its mills in this State; refined crude oil in this State; maintained a deposit or storage of its products, and kept on deposit in the banks of New York large sums of money for the use of the relator and for carrying on its business. Such are the statements in the return. (*People ex rel. Sims* v *Fire Commissioners*, 73 N. Y., 437; *People ex rel. Peck* v. *Commissioners*, 106 id., 64; Code, § 2139.) It is suggested by the relator that under section 2139 the court should now permit it to introduce affidavits contradicting these allegations. The return was made in January; and whatever might be our power to hear contradicting affidavits we do not think that, at so late a time and after argument, we should take the course suggested.

Taking, then, this return of the facts, we think that the decision in *People* v. *Horn Silver Mining Company* (105 N. Y., 76, at p. 83), shows that the company was doing business in this State. Such was the conclusion of Judge WALLACE in *Southern Cotton Oil Company* v. *Comptroller* (MSS.), where this company brought an action in equity to restrain the collection of the taxes, in which action the relator set forth in affidavits the nature of its business here.

The relator to enforce its view cites the act of 1851, chapter 176, and the act of 1855, chapter 37, and *The Parker Mills* v. *Commissioner of Taxes* (23 N. Y., 242), construing the latter act, and also *People ex rel. Bank of Montreal* v. *Commissioner of Taxes* (59 N. Y., 40). But those laws and those decisions respect the taxation of property in this State. They do not touch the question now involved. This present law is not a tax on property. (*Home Insurance Company* v. *New York*, 134 U. S., 594; S. C., 92 N. Y., 329; *People* v. *Equitable Trust Company*, 96 id., 387.) It is a tax on the

**86** PEOPLE ex rel. SOUTH. COT. OIL CO. *v.* WEMPLE.

THIRD DEPARTMENT, JULY TERM, 1891.

privilege of doing business here. (*State Railroad Tax Cases*, 92 U. S., 575.)

The subject was again considered in *People* v. *American Bell Telephone Company* (117 N. Y., 241), and the distinction taken in that case confirms the views above expressed.

The relator further insists that this law, in its effect on corporations of other States, is unconstitutional as an interference with interstate commerce. (*Robbins* v. *Shelby County Taxing District*, 120 U. S., 489; *Asher* v. *Texas*, 128 id., 129; *Leloup* v. *Mobile*, 127 id., 640.) But this is well answered by Judge WALLACE in the case just referred to. He says that the State could not tax the privilege of soliciting orders here in behalf of sellers doing business in other States. "But a foreign corporation which establishes a business domicile here, and brings its property within this jurisdiction and mingles it with the general mass of commercial capital is taxable here, and the power of the State is ample to tax its property or to lay a tax on its privilege of doing business." It seems to us that this is a sound distinction, and that it shows that the present case does not come within the decisions condemning interference with interstate commerce. (*Society for Savings* v. *Coite*, 73 U. S. [6 Wall.], 607.)

There is a clear distinction between the cases in which a citizen of one State sends agents or drummers into another, and the State into which they are sent imposes a license fee on them, and other cases in which a citizen of one State goes into another and carries on business there. In the latter class of cases there seems to be lacking that element of interstate commerce which a majority of the court discovered in the *Robbins Case*. The argument of the relator seems to go so far that the State could never, under this statute, tax a corporation of another State for any business which it should do in this State, coming here and carrying on such business. And when we consider that it is the privilege of doing business here as a corporation, on which this law imposes a tax, we shall see that the law is not subject to the criticisms made by the relator.

It may not be easy to draw the line between such laws as do and such laws as do not interfere with the constitutional right, that congress alone shall control interstate commerce. The views of the judges of the highest court of the country vary, and many of the cases

show very able dissenting opinions. But from the best examination which we can give of this case, and of the decisions referred to by the relator's counsel, we think the action of the comptroller was correct. No argument is presented as to the amount of the tax, in case the relator is taxable.

Decision of the comptroller confirmed, with fifty dollars costs and disbursements.

LANDON and MAYHAM, JJ., concurred on the merits.

Decision of comptroller confirmed, with fifty dollars costs and disbursements.