Mayham, P. J.
The relator is a foreign corporation, incorporated under the laws of the State of Pennsylvania as a railroad company, with an authorized capital stock of $151,700.00, having terminal facilities in the State of New York, and owning and leasing real estate therein, where; it receives goods and passengers for transportation in the; transaction of its business as a carrier, and has since-January I, 1880, engaged in business in the State of New York, which business is not of the class or kind exempted, from taxation under chapter 582 of the Laws of 1880.
From. 1880 to 1889 the relator declines to make any" return to the comptroller of this State under the act last referred to, except that it was engaged in interstate commerce, and that any tax imposed upon its business or franchise under this act was in violation of article 1, section 8, subdivision 3, of the Constitution of the United States.
In 1889 the comptroller appointed a special commis *88 sioner to examine into the business and capital stock of the relator situate and employed in the State of New York. On the filing of the report of such commissioner, the comptroller imposed and settled a tax upon the corporation for each year from 1880 to 1889, both inclusive, based on the value of the capital stock employed in the State of New York as per report filed, which amounted an the aggregate to the sum of $37,169.90, to which he added a penalty of ten per cent., and gave written notice thereof to said corporation, annexed to which was a statement of the tax so settled.
The corporation, after receiving the notice from the comptroller of the settlement of this tax, applied on petition and affidavit to that officer for a revision and re-adjustment of the several accounts for taxes settled against it, and the comptroller, on September 29, 1891, ■made an order declining to make any revision or re-adjustment of the same, whereupon the relator sued out this writ of certiorari.
It can hardly be denied that from the petition, return .and evidence in this case the relator is shown to be a foreign corporation, doing business in this State, and as such is liable under the provisions of section three of chapter 542 of the Laws of 1880, as amended by chapter 501 of the Laws of 1885, to the tax upon the amount of its capital •stock used in its business in this State, unless as such corporation it has immunity from such tax, under the Federal constitution, relating to interstate commerce. The petition of the relator alleges that no part of its line or lines owned, leased or operated by it is within the State of New York, but admits that it owns and leases land in the State of New York, which it uses in its business. The •answer of the defendant denies that the relator during the years for which the tax is imposed was wholly engaged in commerce in States other than the State of New York, and between different States, and between the State of New York and different States, and that it is not in any *89 way engaged in carrying freight and passengers within the State of New York ; and alleges that it appears from the official certificate of the secretary of internal affairs of Pennsylvania that the Eastern terminus of its vast system of transportation is in the city of New York, where it has extensive and valuable terminal facilities and carries on a substantial and important part of its business.
This allegation of the answer seems to be supported by the evidence of one of the officers, of the relator’s company taken before the commissioner, appointed by the •comptroller and made a part of the record of this case. Within the letter of this act, we do not think the relator a foreign corporation doing business in this State (People ex rel. Southern Cotton Oil Co. v. Wemple, 61 Hun, 83).
The statute under which the comptroller assumes to act, authorizes a tax upon the franchise or business of a corporation organized under the laws of any other State or country and doing business in this State, and the comptroller in this case in settling the account of this tax, expressly states that the same is “ for tax on franchise or business, based on the value of the capital stock employed in New York State, pursuant to the Laws of 1880, chapter 542, as amended by the Laws of 1881, chapter 361; Laws of 1882, chapter 151 ; Laws of 1885, chapters 359, 501, and Laws of 1889, chapter 353, for ten years ending November 1, 1889.
It will be seen that this assessment or tax is upon the franchise or business of the relator in this State based upon the value of the capital stock employed therein, and is at the rate per cent, per annum allowed by that act, depending upon the dividends declared upon the stock for these years, as the amount of stock and dividends appear from the report of the special commissioner appointed by the comptroller.
Before the amendment of 1885 above referred to, the whole amount of capital stock of the corporation could be taken as the basis of estimating and making the *90 account of this tax by the comptroller. By that amendment nine additional sections were added to the original act of 1880. By section 11, which is the first of the added sections, the comptroller is authorized and empowered to-ascertain, fix and determine the amount of capital stock employed within the State, and to settle an account of the taxes and penalties due thereon.
In the case People ex rel. Southern Cotton Oil Co. v. Wemple (42 State Rep. 634), O’Brien, J., says : “ The basis of the tax is the amount or proportion of the capital used here in the transaction of its ordinary business. How much that may be in any particular case is generally a question of fact to be determined by the comptroller-under the procedure pointed out by the statute.”
If this corporation is within the taxing power of the-State, and the statute under which it is sought to be taxed when applied to it, is not in conflict with the provisions-of the Federal constitution, which confers upon Congress-the exclusive power to regulate commerce between the States; then, we think that the determination of the comptroller upon the question of fact as to what proportion of the capital of the relator was used in this State in the transaction of its business should not be disturbed by this-court.
The rule has long been settled, that when a taxing officer is charged with the duty of determining the amount of an assessment -for taxation, his determination will not be disturbed, unless clearly shown to have been erroneous (Runk v. St. John, 29 Barb. 585 ; Hibernian Nat. Bank v. Lacombe, 84 N. Y. 367, 385 ; Kelly v. Crapo, 45 Id. 86; People ex rel. Am. Contracting & Dredging Co. v. Wemple, 60 Hun, 234, affirmed and the doctrine restated, 129 N. Y. 565 ; People ex rel. American Contracting and Dredging Co., 129 N. Y. 558).
We are then left to consider the remaining question, as to the power of the State to tax the relator on its franchise or business, based upon its capital and stock employed in *91 this State. If we are right in the conclusion we have reached above, the only ground upon which this tax can be set aside in these proceedings, is that of want of power in the State to impose tax upon the relator on the ground that the relator’s only business in this State is that of conducting interstate commerce.
It is clear that a tax on a foreign corporation doing business, cannot be taxed in this State on its franchise, as the franchise is not granted in this State, and would no more be the subject of taxation here than would its property owned and used by it in another State. In People v. Equitable Trust Co. (96 N. Y. 387) it was held, that nonresidents’ property having no legal situs' here, and business not carried on here, are beyond, the jurisdiction of this State, and not subject to taxation here, and that a defendant being a foreign corporation, could not be taxed here in reference to its property situate out of this State,, and its business not done here. Nor could, it be taxed on account of its corporate franchise, as that was not given by our laws, was dependent upon the laws of the State of its creation and had no existence separate therefrom.
This seems to be conceded by the defendant’s counsel, and also conceded that the tax imposed by the comptroller is not imposed upon its property, but for the privilege which is extended to' it by the State, of doing business here, as a corporation, and in its corporate name (People ex rel. Southern Cotton Oil Co. v. Wemple, supra).
In this case the court also holds that “ The State has the power to exclude corporations of other States from doing business within its jurisdiction. If, however, it permits them to come here and transact business, it may impose a tax upon them for this privilege, and this is not a regulation by the State of interstate commerce, but a lawful exercise of the power of taxation upon corporate bodies, that .for the time being are within its jurisdiction for that purpose.”
The learned judge in this opinion, in a brief but com *92 prehensive manner, defines the boundary line between State and Federal jurisdiction, as follows : “ The only limit upon the power of the State to exclude foreign corporations from doing business within its limits, or to exact conditions for such privilege, arises where the corporation is in the employ of the Federal government, or where its business is strictly commerce, interstate or for■eign.”
It is not pretended that the relator is in the employ of the Federal government. Nor can it, we think, be successfully maintained that its business is not “ strictly commerce, interstate or foreign.” The petition, return and •evidence discloses: That a large per cent, of its business in the State of New York is delivering freight and passengers from other States into this State, and receiving passengers and freight from this State for transportation -to other States, yet as a corporation it keeps a large number of workmen, clerks and agents employed in this State, owns and uses in its business a large amount of real estate in this State, and leases and uses in its corporate business, and for the same use and purposes leases and occupies valuable real estate in this State, keeps for the use of its corporate business large balances in banks in this State, and does other acts in the conduct of its ■corporate business, and it was suggested by the learned counsel for the defendant on the argument, that as between the State of New Jersey and New York the jurisdiction of New York extended to the center of the Hudson River,the relator’s transportation line extended through the territorial jurisdiction of this State from that point to the docks and slips in New York City, and that, therefore, all the business done by the relator in New York was carried by it through New York territory, and that the allegation of. the petition that “no part of relator’s line, or of the line leased, or operated by it is within the State of New York, and that the compensation •which it receives is entirely for transportation in States of *93 the Union other than the State of New York or transportation between the State of New York and other States of the Union,” is not sustained by the facts.
No point is made upon the defendants brief, and as the Hudson River is at the point where the relator’s line crosses a navigable stream; we will not stop to discuss that point. But, independently of that suggestion, we think it sufficiently appears as we have shown, that the sole business of the relator in this State is that of interstate commerce. As a great railroad corporation doing business in, and between many states in the Union, with terminal facilities and property in the city of New York, it established offices, kept employees, made bank deposits, and in that manner facilitated its general interstate business, and thus took itself out of the taxing power of the State, under chapter 485 of the Laws of 1880 and its amendments.
If this tax was aimed at the business of the relator transacted in this State, other than that of commerce between different States, it is not in violation of the Federal constitution and the power of this State to tax it for the privilege of doing business, has not only been sustained by the State courts, but by the United States supreme court as well.
In People v. Home Ins. Co. (92 N. Y. 340, 341) Ruger, J., says: “We have before seen that the State legislature had an undoubted right by virtue of its jurisdiction over corporations, organized under its laws, to levy such tax on their business and privileges aside from all property taxation as in its discretion it might deem just and.proper in order to provide revenue for the State.”
In the same case on appeal to the United States supreme court (134 U. S. 594), FIELD, J., says: “No constitutional objection lies in the way of the legislature prescribing any mode or measurement to determine the amount it will charge for the privilege it bestows.”
It is true that this was said in reference to the grant *94 ing of a franchise, and the right to do business, to a domestic corporation, the same case being in the Federal court on the question of the right to tax stock when represented in government bonds. It is insisted by the relator that the United States supreme court, in the case of Gloucester Ferry Co. v. Pennsylvania (114 U. S. 196) is analogous to the case at bar and decisive of it.
In that case the sole business of the ferry company was to carry passengers and freight across the Delaware River from Gloucester, New Jersey, to Philadelphia in Pennsylvania. Under the laws of Pennsylvania the State sought to tax the ferry company. There was no evidence that the ferry company had any property, or did any business in the State of Pennsylvania and the court held that as the sole and exclusive business of the ferry company was to carry passengers and freight from one State to the other, it was clearly interstate commerce, and its control was in the Federal jurisdiction.
The business of the ferry company did not extend through several States, nor did it carry on a business in the city of Philadelphia, and the case was, therefore, in that respect like the one at bar. In the Federal courts it has been held, that a license cannot be charged in one State upon a drummer or peddler from another State, on the ground that such license is a restriction upon interstate commerce, which belongs solely to the Federal government.
But I have been referred to no case where that doctrine has been extended to corporations formed in one State and doing business in another, except where the business is confined exclusively to interstate commerce.
In the case of People v. Horn Silver Mining Co. (105 N. Y. 76) it was held that a foreign corporation, organized under the laws of the Territory of Utah, for the mining and refining of silver, the business was all done in Utah and Chicago, but its products were sent to New York for further refining and sale ; it was held that it did not do a *95 ■manufacturing business in New York so as to exempt it ■ from taxation, but that, as it was refining and selling here it was doing business in the State so as to subject it to taxation under the Laws of 1880.
On appeal to the supreme court of the United States, that court, in affirming the judgment of the court of appeals, uses this language: “ The objection that it •(this tax) operated as a direct interference with interstate ■commerce, we do not think tenable. The tax is not levied upon articles imported, nor is there any impediment to their importation. . . . The tax is only levied upon the franchise or business of the company. Thus holding that the tax may be imposed upon the business and, at the same time, holding that such a tax is not an undue interference by a State with interstate commerce.
In Western Union Telegraph Co. v. Massachusetts (125 U. S. 530); Massachusetts v. Western Union Telegraph Co. (141 Id. 40); Pullman Car Co. v. Pennsylvania (141 Id. 18) ; Main v. Grand Trunk R. R. Co. (142 Id. 217), the United States supreme court have upheld the right to tax companies doing interstate business by the State authorities. It is true that the courts have in some instances been divided, and in some cases the decisions have been put upon the ground that a large part of the corporate property was in the State where the tax was imposed. In the case at bar it seems that the only actual business done by relator in this State was to receive and discharge freight and passengers carried between the States.
From the above references it is clear that if the business of the relator transacted in this State is only an incident to its interstate carrying trade betwefen this and other States, then it cannot be said that it is carrying on such a business within this State as to subject it to the taxing power of the State, and while it is difficult to determine the exact point at which the authority of the State ends and the exemption under the Federal authority com *96 menees, we are inclined to the opinion that the business transacted by the relator in this State, was not such a business carried on in this State as to bring it within the taxing power of the comptroller; and that the writ of certiorari should therefore be sustained.
The assessment and order of the comptroller must be reversed, and the tax remitted to the relator, with costs.
Herrick, J.
Concededly the tax imposed by the comptroller upon the relator is not a franchise tax, nor a tax upon its property located in this State. It is a tax upon its business. What is that business ? The relator is engaged in transporting freight and passengers through the States of New Jersey and Pennsylvania; it has terminal facilities in the City of New York, where it discharges freight and passengers brought over its lines from without the State, and receives freight and passengers to be transported over its lines to places beyond the State, but none to be transported to points within the State. The only business that is done within the State by the relator is to receive freight and passengers to be sent out of the State, and to receive freight and passengers shipped from without the State to this State.
The business described is commerce between the States, and a tax upon it is illegal (Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196 ; Robbins v. Shelby Co. Taxing District, 120 Id. 489 ; Leloup v. Port of Mobile, 127 Id. 640). The leasing of property in which to carry on its business, the employing and paying workmen, clerks and agents within the State and paying them here the keeping of money in New York banks, depositing and drawing out the same from time to time, do not constitute a business within the State ; all of these things are but incidents of the business carried on by the relator, the machinery by which it is transacted ; it is not the business itself. There is a clear distinction between this case and that of the South *97 ern Cotton Oil Co. (61 Hun, 83); there the court said the company “ maintained a sales agency in the city of New York; sold the products of its mills in this State ; refined crude oil in this State ; maintained a deposit or storage of its products, and kept on deposit in the banks of New York large sums of money for the use of the relator and for carrying on its business.”
That describes a business, not the incidents to or the means by which it is carried on, but the business itself, all of which was done within this State.
This is not the case of a co-partnership or corporation having its principal place of business in New Jersey, or some other State, establishing a branch house in this State and carrying on business here, bringing its property here and mixing it with the general mass of property and commercial capital of the State. All corporations engaged in transporting freight and passengers between and through the States, must have the means to effect such transportation and must have terminal facilities, and while the property owned by them in the several States and used to carry on such business may be subject to a property tax by the respective States, yet the business itself cannot be. And the caring for and maintaining the means or instruments of transportation, the acquiring, leasing or managements of depots, warehouses or docks, the employing of men necessary to carry on such transportation, is not a separate and distinct business which can be taxed.
Of course some part of the relator’s business is carried on in this State; necessarily so ; it would not be interstate commerce if part of it was not carried on in different States; but on the other hand it appears that none of the relator’s business is carried on wholly within this State— that is, none of its transporting business ; that which is done wholly within this State is not business, but merely the necessary incidents of business. Commerce between the States being the only business, in which the relator is *98 engaged and the tax in question being levied not as a property or franchise tax, but as a tax upon its business, I think the determination of the comptroller was erroneous and should be reversed.
Let an order be entered accordingly, with ten dollars "costs and printing and other disbursements.
Putnam, J., concurred;
Note on foreign corporations “ doing business ’’ here.
The phrase “ doing business in this State," or its substantial or approximate equivalent, is used in a variety of statutes both in this and other States, and such provisions constantly give rise to contention as to what acts or course of dealing makes a case within a designation or a prohibition turning on the expression, “ doing business within,” etc., or the like.
Doubtless different statutes, having different objects in view, maybe susceptible of different interpretation, though using identically the same phrase. But a comparison of the scope that has been given to the phrase as used in different acts is instructive ; for there is a substantial resemblance in the situations of such corporations. The law recognizes, beside the clear distinction between foreign "corporations, considered merely as such, and domestic corporations, a third intermediate category of foreign corporations doing business in the State.
Merrick v. Van Santvoord is the leading case in this State, where it was held that a foreign corporation, though ■ it in contemplation of law had its existence as an artificial person solely in the State creatingit, nevertheless could lawfully establish even its entire traffic in this State ; and its contracts here made by its agents and officers in the ordinary course of business are corporate contracts and do not -necessarily involve individual liability. Merrick v. Van Santvoord, 34 N. Y. 208 ; rev’g, in part, Merrick v. Brainerd, 38 Barb. 574. (Compare Code Civ. Pro. § 1779.) And New Yorkers may go to another State for the purpose of organizing as a corporation there and returning to carry on as its officers and agents here the traffic of the corporation within this State. Demarest v. Flack, 128 N. Y. 205 ; affi’g 32 State Rep. 675 ; s. c., 11 N. Y. Supp. 83.
Conversely, "a New York corporation may be formed and exist in. New York for the sole purpose of cárrying on *99 a traffic in another State or country (Whitford v. Panama Railroad Co., 23 N. Y. 465).
Tlie restrictions or burdens imposed .on such corporations are generally expressed as applicable to. corporations doing business ” here.
The principal classes of statutes which raise the question what acts are sufficient to constitute a doing of business with the State :
Statutes forbidding foreign corporations to do business. within the State except upon specified conditions., Statutes such as these are often relied on as affecting tli.e validity of contracts made or of titles acquired (see notes of recent typical .cases below).
Code Civ. Pro. § 1812, makes the preceding provisions restricting injunction, receiver, and suspension, etc., of director in certain corporation causes, applicable to a foreign corporation if it “ does business ” within the State, or has within the State a business agency or a fiscal agency, or an agency for the transfer of its stock.
Penal Code, § 613, makes preceding provisions which punish acts and omissions of directors applicable to a foreign corporation “if it carried on business or kept an office therefor, within this State.”

Notes of cases.

Single tratisaction, not doing business.—Campbell Printing Press & Mfg. Co. v. Hering (Pa. 1891), 20 Atl. Rep. 1061. Assumpsit by a foreign corporation for rent of a printing press. An affidavit of defense stating that plaintiff was a foreign corporation and that it had not filed with the secretary of the commonwealth a statement' showing the location of its office and the names of its agents within the commonwealth as required by Const. Pa. art; 16, § 5, and-Act April 22, 1874, P. L. Pa. 108. Judgment for plaintiff by the court. Held, no error in holding such affidavit of defense insuffi-cient to raise the question whether the contract of a foreign corporation doing business within the State, in violation of the constitution and law referred to, can be enforced in the courts of the State or the affidavit of defense did not aver that plaintiff was doing business within the State. Judgment was properly rendered for the plaintiff.
Colorado Iron Works v. Sierra Grande Mining Co., 15 Colo. 499; s. c., 25 Pacif. Rep. 325. Action for a balance on account due for machinery purchased in Colorado by defendant, a foreign corporation. Service on defendant by service upon stockholder. *100 Held, error to grant defendant’s motion to quash the summons and return thereon merely because the latter showed the defendant was-a foreign corporation not doing business in Colorado in accordance with the requirements of the laws of the State and that the court had no jurisdiction of the suit. A single purchase of machinery within the State by a foreign mining corporation to be transported to and set up in the State of its domicile, is not within the inhibitions, of section 260 of the Gen. Stats, of Colorado, which prohibits foreign corporations from doing business within the State until they have filed with the secretary of State a certificate designating their principal place of business within the State and appointing an agent upon whom process may be served. But such a purchase is a sufficient doing of business in the State, to render it amenable to the jurisdiction of the courts of the State so far as the enforcement of the purchase price is concerned, if jurisdiction can be obtained or provided by the laws of the State. Service upon stockholder was held sufficient (citing Railroad Co. v Gallahue, 12 Gratt. (Va.) 655 ; cited with approval in Railroad Co. v. Harris, 12 Wall. (U. S.) 65 ; Bennington Iron Co. v. Rutherford, 18 N. J. L. 158; Moulin v. Ins. Co., N. J. L. 233, 244; Milk Co. v. Brandenburgh, 40 N. J. L. 112; Bank v. Earle, 13 Pet. ( U. S.) 519 ; Day v. Bank, 13 Vt. 97 ; Newby v. Colt’s Fire Arms Co., L. R. 7 Q. B. 293.
— taking a mortgage not doing business.—Reeves v. Harper (La. 1890) 9 South Rep. 104. Petitory action issue title vel non. The party Reeves was the widow of one who mortgaged his land to-secure a loan from a foreign corporation, and the parties opposed to-Reeves claimed under that mortgage and conveyances afterwards. Judgment against Reeves. Reeve’s contention was that art. 236 of the Constitution of La.—which provides that no foreign corporation shall do any business in this State without having one or more-known places of business, and an authorized agent or agents in the State upon whom process may be served—bad been violated, as this corporation had no place of business or agent in this State, and the notes and mortgages were null and void under articles 12,1893,1895, of the Civil Code.—Held, no error in giving judgment against this, contention. The proofs show here that the corporation transacted no business in this State. The transactions were all in another State, except the mere execution of the mortgage to secure the loan, and'the acceptance of that was in the other State. The Article of the Constitution does not deny to citizens of this State the privilege of borrowing money from foreign corporations, nor does it prohibit, such corporations from lending money to our citizens, provided only that .such transactions are not made in the course of business. *101 carried o.n by the corporations of this State without complying with the requirements of this Article.
Scruggs v. Scottish Mortgage Co. (a corporation of Great Britain), 54 Ark. 566; s. c., 16 Southwest Rep. 563. Action to cancel notes on mortgage held by defendant and for injunction on the ground of usury. Crossbill by defendant (a foreign corporation) for foreclosure of mortgage. Decree of foreclosure under crossbill after original bill was dismissed.
Company’s agent for lending its money was in Mississippi. Contention of plaintiff (defendant in crossbill) that the company could not recover because it did business in Arkansas without having an agent in the State with a known place of business upon whom process could be served, as required by Const., art. i2,§ 11.—Held, that this contention is not tenable. From the testimony, the company did np business in the State at the time of making the loan. The - .agreement for the loan on land was made in Mississippi and the notes and securities delivered and the money paid there, and the transaction was not within the meaning of the constitutional provision.
—suing is not “ doing busitness.”—-Guin v. New England Mortgage Co. (Ala. 1890) 8 South Rep. 388. Bill in chancery for foreclosure of mortgage by a foreign corporation. An amended answer that •complainant at the time of bill filed did not have the place of business, and the agent or agents, required by the constitution and statute to entitle it to do business in the State of Alabama (Const, art. 14, § 4; Acts 1886-87, p. 102). Decree of foreclosure.—Held, proper, as whether this amended answer was true or not was immaterial. The institution and prosecution of suits is not the doing of business within the provisions of the constitution and statutes in question, but is within the competency of foreign corporations whether they have a known place of business and an agent thereat or not. Citing Christian v. Mortgage Co., 89 Ala, 198 ; s. c., 7 South Rep. 497.
Lack of power of foreign corporation matter-of dejehse.— Nelms v. Edinburgh American Land Mortgage Co. (Ala. 1891) 9 South Rep. 341. Bill by foreign corporation to foreclose mortgage. Demurrer.—Held, no error in overruling demurrer on the ground that the bill should have averred facts to show that the; agent of the company designated under Const. Ala. art. 14, § 4; and Acts 1886-87, p. 102, had authority to exercise any corporate functions. Nor was the bill demurrable for failure to allege a compliance with the Acts 1886-87, P- 103, § 3, which provides that it shall not be lawful *102 for any person to act as agent or transact any business for a foreign corporation, until the corporation has complied with the requirements óf the act, the pre-emption being in favor of a compliance. These.demurrers stand upon the idea of no authority in the company to make these loans or contracts. Such matters should be. presented as pleas or answers, not being ground of demurrer. Citing: Boulware v. Davis, 90 Ala. 207, and other cases. The writer of the-opinion and other members of the court believed that the rule-declared in Christian v. Mortgage Co., 89 Ala. 198, (that everything must, be-taken against the pleader, so that an imperfect allegation of agencies rendered the complaint void), and in Farrier v. Security Co., 88 Ala. 275, was a departure from the principles of pleadings as held in the older cases cited, and dissent from , these later decisions and adhere to the rule declared in the older cases.
Interstate commerce excepted.—Ware v. Hamilton Brown Shoe Co. (Ala. 1891.) 9 South Rep. 136. Bill in chancery alleging a. mortgage by defendants to a third party for real estate to secure part of the purchase money (a deed to the wife), and to subject the interest of defendant in the same to the payment of a debt to the plaintiff, a foreign corporation, for goods sold to the defendant (the husband). .Held, no error in overruling a demurrer to the bill, on the ground that it was not shown that complainant, a foreign corporation, had an agent and a known place of business in this State as required by Const., art. 14, § 4. This provision of the constitution was not intended to interfere with interstate commerce, and does not prevent a foreign corporation from selling a merchant, of the State goods to be shipped into the State.