THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE PENNSYLVANIA RAILROAD COMPANY v. EDWARD WEMPLE, as COMPTROLLER OF THE STATE OF NEW YORK.

*Taxation — of foreign corporations — the business of a railroad company consisting wholly of interstate commerce, is not taxable.*

In a proceeding by writ of *certiorari* to review the decision of the comptroller of the State of New York in assessing, under chapter 542 of the Laws of 1880, and the acts amendatory thereof, a tax upon a railroad company, it appeared that the company was a foreign corporation, having terminal facilities in New York city, owning and leasing real estate there, employing workmen and keeping money in banks of that city, but that all these matters were only incidental to its business, which was that of forwarding and receiving passengers and freight between that and other States.

The comptroller sought to sustain the tax as a tax upon the "business" of the railroad done in the State of New York.

*Held*, that the railroad company was not subject to tax.

That the business done by it in the State of New York was interstate commerce.

That the instruments used in that State to carry out its engagements did not constitute a separate business which was taxable.

That necessarily a part of the business of its interstate commerce was carried on in that State, but that none of such business was carried on wholly within that State.

CERTIORARI issued upon the petition of the Pennsylvania Railroad Company to Edward Wemple, as Comptroller of the State of New York, to review an account settled by him against it for taxes and penalties, under chapter 542 of the Laws of 1880, and its amendatory and supplementary acts, for the sum of $40,886.89, a revision of the settlement having been refused after a rehearing, and the taxes and penalties having been paid under protest.

PEOPLE ex rel. PENN. R. R. CO. v. WEMPLE.    253

THIRD DEPARTMENT, SEPTEMBER TERM, 1892.

The defendant Edward Wemple, the comptroller, claimed that, by section 3 of chapter 542, Laws of 1880, and the several acts amendatory thereof, it is declared that every corporation organized under the laws of any other State or country, and doing business in this State, with certain exceptions not material here, shall be subject to and pay a tax into the treasury of the State, as a tax upon its corporate franchise or business, to be computed as follows:

" If the dividend or dividends made or declared by such corporation * * * during any year ending with the first Monday in November, amount to six or more than six per centum upon the par value of its capital stock, then the tax to be at the rate of one-quarter mill upon the capital stock for each one per centum of dividend so made or declared, or if no dividend be made or declared, or if the dividend or dividends made or declared do not amount to six per centum upon par value of said capital stock, then the tax to be at the rate of one and one-half mills upon each dollar of a valuation of the said capital stock made in accordance with the provisions of the first section of this act."

Until the amendment to section 11 of this act, by chapter 501 of the Laws of 1885, the corporations named were liable to a tax upon their capital stock without reference to the amount employed within this State. By this amendment the rule was changed, and the comptroller was authorized and empowered to ascertain, fix and determine the amount of capital employed within this State, " and to settle an account for the taxes and penalties due the State thereon."

By section 12, whenever a corporation, liable to make reports under any of the provisions of this act, shall make a report which is unsatisfactory to the comptroller, he is authorized to examine, or cause to be examined, the books and records of such corporation; and from said books and records, or from any other *data* in his possession which shall be satisfactory to him, to fix and determine the amount of tax and penalty due, and to settle an account therefor against said corporation. And section 13 provides for the appointment of a commissioner and the taking of testimony, etc.

*Edmund Randolph Robinson* and *Charles M. Hough,* for the relator.

*Simon W. Rosendale,* Attorney-General, and *Charles F. Tabor,* for the respondent.

254    PEOPLE ex rel. PENN. R. R. CO. v. WEMPLE.

THIRD DEPARTMENT, SEPTEMBER TERM, 1892.

MAYHAM, P. J.:

The relator is a foreign corporation incorporated under the laws of the State of Pennsylvania as a railroad company, with an authorized capital stock of $151,700, having terminal facilities in the State of New York, and owning and leasing real estate therein, where it receives goods and passengers for transportation in the transaction of its business as a carrier, and has been since January 1, 1880, engaged in business in the State of New York, which business is not of the class or kind exempted from taxation under chapter 382 of the Laws of 1880.

From 1880 to 1889, the relator declines to make any return to the comptroller of this State under the act last referred to, except that it was engaged in interstate commerce, and that any tax imposed upon its business or franchise under this act was in violation of article 1, section 8, subdivision 3 of the Constitution of the United States.

In 1889 the comptroller appointed a special commissioner to examine into the business and capital stock of the relator, situate and employed in the State of New York. On the filing of the report of such commissioner, the comptroller imposed and settled a tax upon the corporation for each year from 1880 to 1889, both inclusive, based upon the value of the capital stock employed in the State of New York as per report filed, which amounted in the aggregate to the sum of $37,169.90, to which he added a penalty of ten per cent, and gave written notice thereof to said corporation, annexed to which was a statement of the tax so settled.

The corporation, after receiving the notice from the comptroller of the settlement of this tax, applied, on petition and affidavit, to that officer for a revision and readjustment of the several accounts for taxes settled against it, and the comptroller, on the 29th day of September, 1891, made an order declining to make any revision or readjustment of the same, whereupon the relator sued out this writ of *certiorari*.

It can hardly be denied that from the petition, return and evidence in the case the relator is shown to be a foreign corporation, doing business in this State, and as such is liable, under the provision of section 3 of chapter 542 of the Laws of 1880, as amended by chapter 501 of the Laws of 1885, to the tax upon the amount of its

PEOPLE ex rel. PENN. R. R. CO. *v.* WEMPLE.   255

THIRD DEPARTMENT, SEPTEMBER TERM, 1892.

capital stock used in its business in this State, unless, as such corporation, it has immunity from such tax under the Federal Constitution relating to interstate commerce.   The petition of the relator alleges that no part of its line or lines owned, leased or operated by it is within the State of New York, but admits that it owns and leases lands in the State of New York which it uses in its business. The answer of the defendant denies that the relator, during the years for which the tax is imposed, was wholly engaged in commerce in States other than the State of New York, and between different States, and between the State of New York and different States, and that it is not in any way engaged in carrying freight and passengers within the State of New York, and alleges that it appears from the official certificate of the secretary of internal affairs of Pennsylvania that the eastern terminus of its vast system of transportation is in the city of New York where it has extensive and valuable terminal facilities and carries on a substantial and important part of its business.

This allegation of the answer seems to be supported by the evidence of one of the officers of the relator's company taken before the commissioner appointed by the comptroller and made a part of the record of this case.   Within the letter of this act we do not think the relator a foreign corporation doing business in this State. (*People ex rel. Southern Cotton Oil Co.* v. *Wemple,* 61 Hun, 85.)

The statute under which the comptroller assumes to act authorizes a tax upon the franchise or business of a corporation organized under the laws of any other State or country and doing business in this State, and the comptroller in this case, in settling the account of this tax, expressly states that the same is "for tax on franchise or business based on value of capital stock employed in New York State, per chapter 542, Laws of 1880, as amended by chapter 361, Laws of 1881, chapter 151, Laws of 1882, chapter 359 and chapter 501, Laws of 1885, and chapter 353, Laws of 1889, for the ten years ending November 1, 1889."

It will be seen that this assessment or tax is upon the franchise or business of the relator in this State based upon the value of the capital stock employed therein, and is at the rate per cent per annum allowed by that act, depending upon the dividends declared upon the stock for three years, as the amount of stock and

256     PEOPLE ex rel. PENN. R. R. CO. v. WEMPLE.

THIRD DEPARTMENT, SEPTEMBER TERM, 1892.

dividends appear from the report of the special commissioner appointed by the comptroller.

Before the amendment of 1885, above referred to, the whole amount of capital stock of the corporation could be taken as the basis of estimating and making the account of this tax by the comptroller. By that amendment nine additional sections were added to the original act of 1880; by section 11, which is the first of the added sections, the comptroller "is authorized and empowered to ascertain, fix and determine the amount of capital employed within this State and to settle an account for the taxes and penalties due the State thereon."

In the case of the *People ex rel. Southern Cotton Oil Company* v. *Wemple* (42 N. Y. St. Rep., 634), O'BRIEN, J., says: "The basis of the tax is the amount or portion of its capital in use here in the transaction of its ordinary business. How much that may be in any particular case is generally a question of fact to be determined by the comptroller under the procedure pointed out by the statute."

If this corporation is within the taxing power of the State, and the statute under which it is sought to be taxed when applied to it is not in conflict with the provisions of the Federal Constitution, which confers upon congress the exclusive power to regulate commerce between the States; then we think that the determination of the comptroller upon the question of fact, as to what proportion of the capital of the relator was used in this State in the transaction of its business, should not be disturbed by this court.

The rule has long been settled that when a taxing officer is charged with the duty of determining the amount of an assessment for taxation, his determination will not be disturbed unless clearly shown to have been erroneous. (*Runk* v. *St. John*, 29 Barb., 585; *Hibernia Nat. Bank* v. *Lacombe*, 84 N. Y., 367, 385; *Kelly* v. *Crapo*, 45 id., 86; *People ex rel. American Contracting and Dredging Company* v. *Wemple*, 60 Hun, 234, affirmed, and the doctrine restated, 129 N. Y., 558, 565.)

We are, then, left to consider the remaining question as to the power of the State to tax the relator on its franchise or business, based upon its capital and stock employed in this State. If we are right in the conclusion we have reached above, the only ground

upon which this tax can be set aside in these proceedings is that of want of power in the State to impose tax upon the relator on the ground that the relator's only business in this State is that of conducting interstate commerce.

It is clear that a tax on a foreign corporation doing business cannot be assessed in this State on its franchise, as the franchise is not granted in this State, and would no more be the subject of taxation here than would its property owned and used by it in another State. In *People* v. *Equitable Trust Company* (96 N. Y., 393), it was held that non-resident's property having no legal *situs* here, and business not carried on here, are beyond the jurisdiction of this State and not subject to taxation here, and a defendant, being a foreign corporation, could not be taxed here in reference to its property situate out of the State, and its business not done here. Nor could it be taxed on account of its corporate franchise, as that was not given by our laws, was dependent upon the laws of the State of its creation, and had no existence separate therefrom. This seems to be conceded by the defendant's counsel, and it is also conceded that the tax imposed by the comptroller is not imposed upon its property, but for the privilege which is extended to it by the State, of doing business here as a corporation in its corporate name. (*People ex rel. Southern Cotton Oil Co.* v. *Wemple*, 42 N. Y. St. Rep., 635.)

In this case the court also holds that "the State has the power to exclude corporations of other States from doing business within its jurisdiction. If, however, it permits them to come here and transact their business, it may impose a tax upon them for this privilege ; and this is not a regulation by the State of interstate commerce, but a lawful exercise of the power of taxation upon corporate bodies, that for the time being are within its jurisdiction for that purpose."

The learned judge in this opinion, in a brief but comprehensive manner, defines the boundary line between State and Federal jurisdiction as follows : " The only limitation upon the power of a State to exclude a foreign corporation from doing business within its limits, or to exact conditions for such a privilege, arises where the corporation is in the employ of the Federal government, or where its business is strictly commerce, interstate or foreign."

It is not pretended that the relator is in the employ of the Federal

258 PEOPLE ex rel. PENN. R. R. CO. *v.* WEMPLE.

THIRD DEPARTMENT, SEPTEMBER TERM, 1892.

government. Nor can it, we think, be successfully maintained that its business is not "strictly commerce, interstate or foreign." The petition, return and evidence discloses that a large per cent of its business in the State of New York is delivering freight and passengers from other States into this State, and receiving passengers and freight from this State for transportation to other States, yet as a corporation it keeps a large number of workmen, clerks and agents employed in this State, owns and uses in its business a large amount of real estate in this State, and leases and uses in its corporate business, and for the same use and purposes leases and occupies valuable real estate in this State; keeps for the use of its corporate business large balances in banks in this State, and does other acts in the conduct of its corporate business; and it was suggested by the learned counsel for the defendant on the argument that, as between the State of New Jersey and New York, the jurisdiction of New York extended to the center of the Hudson river, the relator's transportation line extended through the territorial jurisdiction of this State from that point to the docks and slips in New York city, and that, therefore, all the business done by the relator in New York was carried by it through New York territory; and that the allegation of the petition, that "no part of its (relator's) lines, or of the lines leased or operated by it, is within the State of New York, and the compensation which it receives for transportation is entirely for transportation in States of the Union, other than the State of New York, or for transportation between the State of New York and other States of the Union," is not sustained by the facts.

No point is made as to this upon the defendant's brief, and as the Hudson river is at the point where the relator's line crosses a navigable stream we will not stop to discuss that point. But, independently of that suggestion, we think it sufficiently appears, as we have shown, that the sole business of the relator in the State is that of interstate commerce, as a great railroad corporation doing business in and between many States in the Union, with terminal facilities, and property in the city of New York, it established offices, kept employees, made bank deposits, and in that manner facilitated its general interstate business, and thus took itself out of the taxing power of the State under chapter 542 of the Laws of 1880, and its amendments.

PEOPLE ex rel. PENN. R. R. CO. v. WEMPLE.  259

Third Department, September Term, 1892.

If this tax was aimed at the business of the relator transacted in this State, other than that of commerce between different States, it is not in violation of the Federal Constitution, and the power of this State to tax it for the privilege of doing business has not only been sustained by the State courts, but by the United States Supreme Court as well.

In the *People* v. *Home Insurance Company* (92 N. Y., 340, 341), Ruger, J., says: "We have before seen that the State legislature had an undoubted right, by virtue of its jurisdiction over corporations organized under its laws, to levy such tax upon their business and privileges, aside from all property taxation, as in its discretion it might deem just and proper in order to provide revenues for the State."

In the same case, on appeal to the United States Supreme Court (134 U. S., 594), Field, J., says: "No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privileges it bestows."

It is true that this was said in reference to the granting of a franchise and the right to do business to a domestic corporation, the same case being in the Federal court on the question of the right to tax stock represented in government bonds. It is insisted by the relator that the United States Supreme Court, in the case of *Gloucester Ferry Company* v. *Pennsylvania* (114 U. S., 196), is analogous to the case at bar and decisive of it.

In that case the sole business of the ferry company was to carry passengers and freight across the Delaware river, from Gloucester, N. J., to Philadelphia, Penn. Under the laws of Pennsylvania the State sought to tax the ferry company. There was no evidence that the ferry company had any property or did any business in the State of Pennsylvania, and the court held that as the sole and exclusive business of the ferry company was to carry passengers and freight from one State to the other, it was clearly interstate commerce and its control was in the Federal jurisdiction.

The business of the ferry company did not extend through several States, nor did it carry on a business in the city of Philadelphia, and the case was, therefore, in that respect, like the one at bar. In the Federal courts it has been held that a license cannot be charged in one State upon a drummer or peddler from another State, on the ground that such license is a restriction upon interstate commerce,

260 PEOPLE ex rel. PENN. R. R. CO. *v.* WEMPLE.

THIRD DEPARTMENT, SEPTEMBER TERM, 1892.

which belongs solely to the Federal government. But I have been referred to no case where that doctrine has been extended to corporations formed in one State and doing business in another, except where the business is confined exclusively to interstate commerce.

In the case of *People* v. *Horn Silver Mining Company* (105 N. Y., 76), it was held that a foreign corporation organized under the laws of the Territory of Utah for the mining and refining of silver, the business was all done in Utah and Chicago, but its products were sent to New York for further refining and sale; it was held that it did not do a manufacturing business in New York so as to exempt it from taxation, but that as it was refining and selling here it was doing business in the State so as to subject it to taxation under the Laws of 1880.

On appeal to the Supreme Court of the United States that court, in affirming the judgment of the Court of Appeals (143 U. S., 317), uses this language: " The objection that it (this tax) operates as a direct interference with interstate commerce we do not think tenable. The tax is not levied upon articles imported, nor is there any impediment to their importation. * * * The tax is levied only upon the franchise or business of the company." Thus holding that the tax may be imposed upon the business, and at the same time holding that such a tax is not an undue interference by a State with interstate commerce.

In the *Western Union Telegraph Company* v. *Massachusetts* (125 U. S., 530); *Massachusetts* v. *Western Union Telegraph Company* (141 id., 40); *Pullman's Car Company Case* (Id., 18); *Maine* v. *Grand Trunk Railway Company* (142 id., 217), the United States Supreme Court have upheld the right to tax companies doing business by the State authorities. It is true that the courts have, in some instances, been divided, and in some cases the decisions have been put upon the ground that a large part of the corporate property was in the State where the tax was imposed. In the case at bar it seems that the only actual business done by relator in this State was to receive and discharge freight and passengers carried between the States.

From the above references it is clear that if the business of the relator transacted in this State is only an incident to its interstate carrying trade between this and other States, then it cannot be said

PEOPLE ex rel. PENN. R. R. CO. v. WEMPLE.   261

THIRD DEPARTMENT, SEPTEMBER TERM, 1892.

that it is carrying on such a business within this State as to subject it to the taxing power of the State; and while it is difficult to determine the exact point at which the authority of the State ends and the exemption under the Federal authority commences, we are inclined to the opinion that the business transacted by the relator in this State was not such a business carried on in this State as to bring it within the taxing power of the Comptroller, and that the writ of certiorari should, therefore, be sustained.

The assessment and order of the Comptroller must be reversed and the tax remitted to the relator, with costs.

HERRICK, J.:

Concededly, the tax imposed by the comptroller upon the relator is not a franchise tax, nor a tax upon its property located in this State. It is a tax upon its business. What is that business? The relator is engaged in transporting freight and passengers through the States of New Jersey and Pennsylvania; it has terminal facilities in the city of New York, where it discharges freight and passengers brought over its lines from without the State, and receives freight and passengers to be transported over its lines to places beyond the State, but none to be transported to points within the State. The only business that is done within the State by the relator is to receive freight and passengers to be sent out of the State, and to receive freight and passengers shipped from without the State to this State.

The business described is commerce between the States, and a tax upon it is illegal. (Gloucester Ferry Co. v. Penn., 114 U. S., 196; Robbins v. Shelby Co., 120 id., 489; Leloup v. Mobile, 127 id., 640.)

The leasing of property in which to carry on its business; the employing and paying workmen, clerks and agents within the State and paying them here; the keeping of money in New York banks; depositing and drawing out the same from time to time, do not constitute a business within the State; all of these things are but incidents of the business carried on by the relator; the machinery by which it is transacted is not the business itself. There is a clear distinction between this case and that of the Southern Cotton Oil Company (61 Hun, 83); there the court said the company "maintained a sales agency in the city of New York; sold the product of its mills in this State; refined crude oil in this State; maintained a

deposit or storage of its products, and kept on deposit in the banks of New York large sums of money for the use of the relator, and for carrying on its business."

That describes a business, not the incidents to, or the means by which it is carried on, but the business itself, all of which was done within this State.

This is not the case of a copartnership or corporation having its principal place of business in New Jersey, or some other State, establishing a branch-house in this State, and carrying on business here; bringing its property here, and mixing it with the general mass of property and commercial capital of the State. All corporations engaged in transporting freight and passengers between and through the States must have the means to effect such transportation, and must have terminal facilities; and while the property owned by them in the several States and used to carry on such business may be subject to a property tax by the respective States, yet the business itself cannot be. And the caring for and maintaining the means or instruments of transportation, the owning, leasing or management of depots, ware-houses or docks, the employing of men necessary to carry on such transportation is not a separate and distinct business which can be taxed.

Of course, some part of the relator's business is carried on in this State; necessarily so, it would not be interstate commerce if part of it was not carried on in different States; but, on the other hand, it appears that none of the relator's business is carried on wholly within this State, that is, none of its transporting business; that which is done wholly within this State is not business, but merely the necessary incidents of business. Commerce between the States being the only business in which the relator is engaged, and the tax in question being levied not as a property or franchise tax, but as a tax upon its business, I think the determination of the comptroller was erroneous and should be reversed.

Let an order be entered accordingly, with ten dollars costs and printing and other disbursements.

PUTNAM, J., concurred.

